Arecibo Motor Company, demandante y apelante, *v.* Caribe Motors Corporation, demandada y apelada.

Núm. 8423.—*Sometido:* Abril 7, 1942. *Resuelto:* Mayo 18, 1942.

*L. Mercader,* abogado de la apelante; *Brown, González & Newsom,* y *E. Córdova Díaz,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR. emitió la opinión del tribunal.

En este recurso la Arecibo Motor Company apela de la sentencia dictada por la Corte de Distrito de San Juan que declaró sin lugar su demanda reclamando se condenara a la Caribe Motors Corporation a pagarle $116,900 en concepto de daños y perjuicios por incumplimiento de contrato celebrado entre las partes. Aunque la apelante en su alegato hace ocho señalamientos de error la única y fundamental cuestión envuelta en este recurso es si la corte inferior erró o no al resolver que el contrato verbal celebrado por la demandante, primero con la firma Figueroa & Gautier y luego con la demandada Caribe Motors Corporation, fué uno sin término o plazo fijo de duración que podía ser cancelado en cualquier momento por cualquiera de las partes.

La corte inferior en la opinión que dictó para sostener su sentencia se expresó, en parte, así:

"Hemos analizado cuidadosamente toda la prueba practicada por las partes, y especialmente la de la demandante, de la que aparece que nunca existió un contrato escrito entre la demandante y Figueroa & Gautier para la venta de dichos vehículos, y mucho menos entre la demandante y la demandada. La prueba testifical demuestra, de una manera clara y terminante, que a virtud del convenio verbal celebrado entre la demandante y Figueroa & Gautier se le concedió a la misma el derecho exclusivo de vender los referidos vehículos en el distrito de Arecibo y que al concedérsele ese derecho no se le fijó término o plazo. Y siendo ello así, aun en el supuesto de que la demandada hubiera ratificado y hecho suyo el convenio o contrato verbal celebrado entre Figueroa & Gautier y la demandante, el mismo no tenía término de duración y podía terminarse en cualquier momento.

" * * * * * * *

"Estamos convencidos de que nunca existió entre la demandante y la demandada convenio o contrato de clase alguna a virtud del cual la demandada viniese obligada a venderle a la demandante vehículos durante un número determinado de años, y de que lo que existió fué un contrato verbal, sin término fijo de duración, a virtud del cual la demandada venía obligada a venderle a la demandante los vehículos que la segunda le comprase para venderlos dentro del te-

rritorio de Arecibo. La demandada no podía dar más de lo que tenía, pues su contrato con la General Motors Corporation, Foreign Distributors Division, puede ser cancelado en cualquier momento por cualquiera de las partes previa notificación por escrito o cable al efecto.''

¿Está sostenida por la prueba presentada por las partes la conclusión a que llegó la corte inferior de que los contratos verbales celebrados por la demandante con Figueroa & Gautier y con la demandada eran por tiempo indefinido y podían ser cancelados en cualquier momento por cualquiera de las partes? Después de considerar cuidadosamente la transcripción de evidencia, somos de opinión que la pregunta debe contestarse en la afirmativa. Veamos, en síntesis, lo que declararon los testigos de una y otra parte en cuanto al término de los contratos.

José J. Figueroa, socio de la firma Figueroa & Gautier, que era la distribuidora en Puerto Rico de la General Motors Corporation, declaró como testigo de la demandante que dicha firma hizo un contrato verbal con la Arecibo Motors Company en la misma forma en que lo tenía con el Sr. Hernández de Mayagüez, el Sr. Héreter de Caguas y otros *dealers* de la isla; que Figueroa & Gautier hizo un arreglo con la demandante para darle la representación en Arecibo de todas las líneas a base de un tiempo ilimitado completamente, que podía ser por cinco, diez o quince años . . . ''mientras yo tuviese la representación de General Motors y mientras ellos cumplieran''; que el contrato de Figueroa & Gautier con la General Motors podría terminar en cualquier momento a voluntad de cualquiera de las partes y, que al efecto, en el mes de julio de 1939 la General Motors les canceló la agencia; que para hacer negocios con la demandante Figueroa & Gautier allá para el mes de marzo de 1939 le exigió a los doctores Carmelo y Rafael Colón que constituyeran una sociedad por cinco años, lo que hicieron con el nombre de Arecibo Motor Company, para que pudieran hacer sus arreglos con la General Motors Acceptance Corporation,

que era quien financiaba el negocio, y además que pusieran un establecimiento y almacén en Arecibo; que Figueroa & Gautier les vendía los automóviles a la demandante y ésta los revendía en su distrito. A preguntas del juez ratificó que su contrato con la demandante fué por el tiempo que él tuviera la representación de la General Motors y mientras ellos cumplieran; que el plazo con él era eterno siempre y cuando él tuviera la representación. En el contrainterrogatorio dijo de nuevo que el contrato fué por tiempo indefinido, pero la intención suya fué que durara todo el tiempo que él tuviera la agencia de la General Motors; que la General Motors y Figueroa & Gautier tenían facultad para terminar el contrato en cualquier momento; que los subagentes que tenía Figueroa & Gautier en la isla podían si querían dar por terminado el contrato que tenían con dicha firma en cualquier momento; que Figueroa & Gautier tenía derecho a hacerlo también pero que sólo lo hubiera hecho por causa justificada.

El Dr. Carmelo Colón, uno de los socios de la demandante, declaró que Figueroa & Gautier les concedió la representación en Arecibo por un término de cinco años y que para eso tenía que formar una sociedad con su hermano Rafael y que así lo hizo; que la demandante le compraba los automóviles a Figueroa & Gautier de contado; que representaron a Figueroa & Gautier desde abril hasta julio de 1939; que en este último mes Figueroa & Gautier cesó en sus negocios y la demandante siguió con la demandada Caribe Motors Corporation; que el contrato con la demandada fué que la demandante continuaría igual que con Figueroa & Gautier; que él con quien contrató fué con el Sr. Conway, General Manager de la demandada. Es conveniente transcribir la forma en que declaró el testigo en cuanto a esto, según aparece a la página 81 de la transcripción de evidencia:

"A.—¿Entonces este convenio fué celebrado entre usted y Mr. Conway, usted en representación de Arecibo Motor y Mr. Conway en representación de Caribe Motors?

"T.—De Caribe Motors. El convenio fué que él me dijo que aquél era una continuación del convenio de Figueroa.

"A.—¿Usted le dijo a Mr. .Conway que usted tenía un contrato por el término de cinco años con Figueroa & Gautier?

"T.—Sí, se lo dije. Y me preguntó que si era verbal o que si era escrito, y le dije que verbal.

"A.—Pero lo que le pregunto es si usted le dijo que usted tenía un contrato por cinco años con Figueroa & Gautier.

"T.—*Creo que sí, que se lo dije,* porque hablamos del convenio que teníamos con Figueroa.

"A.—¿Está seguro de que se lo dijo o no está seguro?

"T.—*Bueno, yo no recuerdo ahora exactamente si se lo dije o no,* pero lo que yo recuerdo exactamente es que él me dijo a mí que continuaríamos exactamente en las mismas condiciones que veníamos trabajando con Figueroa. De eso me acuerdo exacto." (Itálicas nuestras.)

Continuó expresando el testigo que la demandada le canceló el contrato a la demandante el 16 de noviembre de 1939 sin motivo ni justificación alguna pues el motivo que se les dió en la carta que les escribió el Sr. Conway el día 14 al efecto de que algunos de los socios de la demandante estaban asociados con una firma que había asumido la representación en Arecibo de una línea de carros y *trucks* que competían con los de la demandada, no era cierto; que él protestó de la cancelación del contrato y vino a San Juan y celebró una entrevista con los socios de la demandada, pero a pesar de su insistencia en que su contrato con Figueroa & Gautier era por cinco años, la demandada no varió su actitud.

En cuanto al término del contrato ésta fué en síntesis toda la prueba de la demandante.

Por la demandada declaró Augusto Gautier, socio de la firma Figueroa & Gautier, quien afirmó que ninguno de los contratos de dicha firma con los distribuidores en la isla tenía término fijo o plazo; que el convenio con la demandante era igual que los demás y podía terminarse en cualquier momento por causa justa que determinaría Figueroa & Gautier; que cuando ellos cesaron como representantes de la General

Motors le recomendaron a la demandada continuara con los agentes de la isla. En la repregunta declaró que Figueroa & Gautier no le exigió ninguna escritura social por término de cinco años a la demandante porque su firma en ningún momento podía comprometerse a dar una franquicia por un tiempo que Figueroa & Gautier no lo tenía.

Asimismo declararon los señores Manuel Hernández Rosa, Pablo Héreter, Jr. y José M. Rocafort, subagentes de Figueroa & Gautier primero y luego de la demandada en Mayagüez, Caguas y Humacao, respectivamente, al efecto de que los contratos que tenían con dichas firmas eran sin plazo fijo alguno pues dependía de que tanto Figueroa & Gautier como la demandada tuvieran a su vez la representación de la General Motors en Puerto Rico y que cualquiera de las partes podía dar por terminado el contrato en cualquier momento; que al cesar Figueroa & Gautier la demandada les dijo por conducto dél Sr. Conway que seguirían a prueba.

Declaró también por la demandada Antonio Prieto Subirat, socio industrial que fué de la demandante y luego empleado de la demandada, y ratificó que el convenio con Figueroa & Gautier fué por el tiempo que tuviera la representación de la General Motors y que no se convino ningún plazo de cinco años; que al cesar Figueroa & Gautier y empezar la demandada Caribe Motors el Sr. Conway reunió a todos los subagentes de la isla y les dijo que continuarían como antes y que cuando fuera necesario un cambio lo haría previa notificación.

Los testigos de la demandada Guillermo E. González y Charles D. Conway corroboran los testimonios de los demás testigos al efecto de que la demandada en ningún momento celebró contrato alguno por término fijo con la demandante ni con ninguno de los demás subagentes de Figueroa & Gautier en la isla, pues se limitaron a informarles en una reunión que se celebró en el Berwind Country Club que dichos subagentes continuarían a prueba y si se deseaba hacer al-

gún cambio quedaban en libertad de hacerlo en cualquier momento.

De acuerdo con esta prueba no podemos convenir con la apelante de que la corte inferior cometiera error al resolver que tanto el contrato celebrado por la demandante con Figueroa & Gautier como el celebrado con la demandada carecía de término o plazo. La única conclusión a que podemos llegar, después de un análisis y estudio detenido de la prueba, es la misma a que llegó la corte inferior. Además, no parece lógico que Figueroa & Gautier primero o la Caribe Motors después, se comprometieran, como pretende la demandante que lo hicieron, a concederles por cinco años su representación para la venta en el distrito de Arecibo de los automóviles de la General Motors, si el contrato que tenía y tiene esta corporación con dichas firmas podía y puede ser cancelado en cualquier momento por carta o por cable.

El hecho de que Figueroa le dijera a los señores Colón que tenían que constituir una sociedad por un término de cinco años para que la General Motors Acceptance Corporation pudiera financiar sus negocios y que además les exigiera que prepararan un salón de exhibiciones y un taller de reparaciones, eran condiciones previas impuestas a la demandante para que el contrato pudiera celebrarse, pero esto no puede interpretarse en el sentido de que se convino en un plazo fijo.

El artículo 1208 del Código Civil que dispone que ''la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes'', citado por el apelante para sostener su recurso, no es aplicable a los hechos de este caso pues, como hemos dicho, la prueba demostró que el contrato podía ser terminado no por la demandada sino por cualquiera de las partes. Manresa, comentando el artículo 1256 del Código Civil Español, equivalente al 1208 nuestro, sostiene la validez de estos contratos al decir:

''También el texto del artículo, refiriendo la prohibición al arbitrio de uno de los contratantes, demuestra que es perfectamente lí-

cito dejar el cumplimiento bajo la forma negativa de la rescisión, *a la voluntad de cualquiera de las partes,* caso frecuente en ciertos contratos (arrendamiento de servicios, suministro de energía eléctrica, etc.), porque en ese supuesto, ni se contraría el artículo, ni se falta a la igualdad entre los contratántes, *que quedan con las mismas facultades respecto al cumplimiento.* (Bastardillas nuestras.)

El error en que incurre la apelante es al sostener que, de acuerdo con la prueba, la demandada Caribe Motors Corporation se comprometió con la demandante a que el término de su contrato duraría mientras la demandada tuviera la representación de la General Motors Corporation en Puerto Rico. La preponderancia de la prueba, a la que dió crédito la corte inferior, demuestra que la demandada en ningún momento hizo tal convenio. Es más, esta teoría está en abierta contradicción con la alegación de la demandante de que el contrato, tanto con Figueroa & Gautier como con la demandada tenía un término mínimo de cinco años. La apelante admite en su alegato que el plazo del contrato de la demandante con Figueroa & Gautier ''expiró precisamente cuando ésta perdió la representación de la General Motors'', y que ''a no ser por la ratificación convenida por la demandada, no habría oportunidad para la exigencia de Arecibo Motor a la Caribe Motors . . .'' Pero es que, de acuerdo con la prueba, no hubo tal ratificación y al no haberla, cae por su base toda la argumentación posterior de la apelante.

Lo que existió entre las partes en realidad fué un contrato de compraventa a virtud del cual la demandante compraba a la demandada los automóviles de la General Motors con el derecho de reventa exclusivo para el territorio del distrito de Arecibo, sin limitación alguna de tiempo. A pesar de usarse por las partes y por los testigos las palabras ''subagentes'' y ''subdealers'', los hechos probados demuestran que la demandante compraba a la demandada dichos automóviles a los precios convenidos y podía revenderlos a los precios y bajo las condiciones que mejor le convinieran.

La distinción entre esta clase de contratos con los de agencia o subagencia está claramente expuesta en 1 Mechem *on Sales* 41, citado en el caso de *Reiter* v. *Anderson*, 262 P. 415, 417, en esta forma:

"Una forma limitada de 'mandato' (agency) que se ha desarrollado en la era moderna es aquel que existe cuando el dueño o fabricante de artículos patentados o de propiedad exclusiva concede el privilegio de venderlos o la exclusiva dentro de determinado territorio a una persona que de otra manera no tendría derecho a vender los artículos en cuestión. Está completamente en armonía con este acuerdo que el llamado agente tenga que comprarle al dueño o fabricante los productos que ha sido autorizado a vender, y cuando este es el caso, lo único que hay de 'mandato' en tales circunstancias es el nombre en sí. Está también completamente en armonía con tal acuerdo que el 'agente' tenga que vender los artículos al precio y bajo condiciones fijadas por el dueño o fabricante. Una persona en tales condiciones se dice por el vulgo que ha obtenido la 'agencia' de dichos artículos cuando lo que se quiere decir realmente es que ha obtenido un derecho más o menos exclusivo a comprarlos y revenderlos dentro de determinado territorio. La transacción es completamente sencilla pero las decisiones están llenas de casos en que las partes quizás se hayan engañado a sí mismas y por lo menos han tratado efectivamente de engañar a otros, llamando 'agencia' a una relación que no se parecía en nada a un mandato en verdad, y que era simplemente una venta de un artículo de propiedad exclusiva, adquiriendo el comprador el derecho de revenderlos bajo los términos y condiciones fijados por el propietario."

En relación con esta clase de contratos se ha resuelto por el peso de las autoridades que cuando no se ha señalado un plazo fijo para su terminación y se provee que pueden ser cancelados por cualquiera de las partes, no puede prosperar una acción de daños por una de las partes cuando la otra da por terminado el contrato.

En el caso de *Ford Motor Co.* v. *Alexander Motor Co.*, 223 Ky. 16, 2 S. W. (2d) 1031 la corte se expresó en esta forma:

"Si las partes acuerdan que los derechos, deberes y obligaciones que surgen de una relación contractual durarán sólo a voluntad o placer de cualquiera de ellas, las cortes no tienen derecho a substituir una duración distinta a dichos derechos. Contratos ejecutorios, terminables a voluntad, en tanto están sin cumplir al momento de su terminación, no conceden base alguna para una causa de acción a una u otra parte. (Citas.) Tales contratos obligan a ambas partes hasta que el derecho de cancelarlo es ejercitado por una u otra parte."

Y en el caso de *Maddox Motor Co.* v. *Ford Motor Co.*, 23 S. W. (2d) 333 se resolvió que "estos contratos obligan a ambas partes hasta que el derecho de cancelarlos es ejercitado por cualquiera de ellas".

Para una discusión más amplia sobre la naturaleza y alcance de estos contratos, véase 4 Williston *on Contracts* (1936) 2854, sección 1027 A, especialmente la subdivisión (5) y los casos y autoridades citados en las notas.

■ Los errores señalados por la apelante en cuanto a la admisión de las declaraciones de los testigos de la demandada, Héreter, Hernández y otros *"subdealers"*, así como las de los señores González y Conway en cuanto a las condiciones de los contratos que dichos *"subdealers"* tenían con Figueroa & Gautier primero y luego con la demandada, carecen de mérito. Habiendo declarado el señor Figueroa, como testigo de la demandante, que el contrato verbal que Figueroa & Gautier celebró con la demandante era igual al que dicha firma tenía con todos los demás distribuidores en la isla y además en cuanto al convenio suyo con la demandada para visitar a dichos distribuidores para tratar que continuaran con la demandada, las declaraciones de los testigos mencionados antes eran admisibles de acuerdo con el artículo 385 del Código de Enjuiciamiento Civil (Ed. 1933) o sea el artículo 23 de la Ley de Evidencia, al efecto de que: "Cuando parte de un acto, declaración, conversación o escrito, se ofreciera en evidencia por una de las partes, la totalidad del mismo asunto podría ser investigada por la otra . . . y que

cuando un acto, declaración, conversación aislada, se presentare como evidencia, podrá también presentarse como tal cualquier otro acto, declaración, conversación o escrito, que fuere necesario para su conocimiento total.''

 Se alega además como error el haber la corte inferior condenado a la demandante a pagar $350 en concepto de honorarios de abogado de la demandada al resolver que la demandante actuó con temeridad al iniciar esta acción. Tomando en consideración todas las circunstancias concurrentes en este caso, somos de opinión que no puede decirse que la demandante haya actuado con temeridad al tratar de obtener una interpretación de acuerdo con su teoría en cuanto al plazo de los contratos celebrados con Figueroa & Gautier y con la demandada. No se trataba de contratos escritos de los cuales pudiera surgir claramente la intención de las partes sino que el pleito ha girado alrededor de la interpretación de unos contratos verbales y si se examinan las referencias que hemos hecho a las notas al calce de la obra de Williston *on Contracts* se verá que la determinación del alcance y facultad para dar por terminados esta clase de contratos, aun cuando son por escrito, ha sido objeto de múltiples procedimientos judiciales y de extensas monografías en distintas revistas legales.

*Con la modificación de eliminar los $350 en concepto de honorarios de abogado, la sentencia recurrida debe ser confirmada.*