TOMÁS FIGUEROA PIÑERO, demandante y recurrente, *v.* MIRANDA & EGUÍA, INC., demandada y recurrida.

*Número:* 12504. *Resuelto:* 22 de septiembre de 1961.

*César J. Dones Magaz,* abogado del recurrente; *Rodríguez Ema y Rodríguez Ramón,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Hernández Matos, como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El demandante convino con la firma Miranda & Eguía, Inc. en transportarle mercancía de los muelles a los almacenes de la corporación, y de allí a distintos comerciantes del área metropolitana. Se estipuló que el contrato no tendría término fijo. A los dos meses de estar el demandante prestando los servicios a la corporación ésta dio por terminado el contrato. Esta actuación dio base para el inicio de este pleito en el que se exige de la corporación el resarcimiento de los daños sufridos por el demandante con motivo de la súbita terminación del contrato.

El tribunal de instancia desestimó la demanda porque entendió que no aducía suficientes hechos constitutivos de una causa de acción, y dictó sentencia declarándola sin lugar.

El contrato celebrado entre las partes dispone que:

"Este contrato se lleva a efecto sin término fijo, pero el compareciente de la segunda parte [el demandante] se obliga a no resolver el mismo sin antes dar notificación escrita por lo menos con tres meses de anticipación al compareciente de la primera parte [Miranda & Eguía, Inc.]" (Corchetes nuestros.)

Un examen de la transcrita disposición revela que el contrato podía ser terminado por cualquiera de las partes, pero se convino expresamente que si el que se obligaba a dar el servicio de transporte optaba por rescindirlo debía notificarle de su intención con tres meses de anticipación a la otra parte. Obviamente, esto último, respondía al propósito de que la demandada pudiere gestionar los servicios de otra persona para que le rindiera el servicio de transportación.

El apelante invoca el art. 1208 del Código Civil, (31 L.P.R.A. sec. 3373) para sostener el criterio de que el juez de instancia erró al desestimar la demanda. Dispone el artículo citado que "[l] a validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contra-

tantes." En *Arecibo Motors Co. v. Caribe Motors Corp.*, 60. D.P.R. 401 (1942), al referirnos a dicha disposición legal,. dijimos:

"El artículo 1208 del Código Civil que dispone que 'la validez. y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes', citado por el apelante para sostener su recurso, no es aplicable a los hechos de este caso pues, como. hemos dicho, la prueba demostró que el contrato podía ser terminado no por la demandada sino por cualquiera de las partes. Manresa, comentando el artículo 1256 del Código Civil Español,. equivalente al 1208 nuestro, sostiene la validez de estos contratos al decir:

" 'También el texto del artículo, refiriendo la prohibición al arbitrio de uno de los contratantes, demuestra que es perfectamente lícito dejar el cumplimiento bajo la forma negativa de la. rescisión, *a la voluntad de cualquiera de las partes*, caso frecuente en ciertos contratos (arrendamiento de servicios, suministro de energía eléctrica, etc.), porque en ese supuesto, ni se contraría el artículo, ni se falta a la igualdad entre los contratantes, *que quedan con las mismas facultades respecto al cumplimiento.*' " [1]

Igual criterio sustenta Scaevola: [2]

"Si el tiempo o *duración* del contrato no entra en la sanción. del artículo 1.256, lo mismo acontece con su término o *extinción*.. Puede ésta quedar a la voluntad de una de las partes, *mediante pacto expreso*, sin menoscabo y quebranto de la pureza y vida. de la estipulación. Sirve el mismo ejemplo, antes citado, del préstamo: al poder devolver yo la cantidad *cuando* quiera, está. en mi potestad terminar el contrato, lo cual no afecta en nada. a la validez y efecto de la obligación. Se conciben y de hecho existen en la realidad arrendamientos en que se estipula su terminación a voluntad del arrendador o del arrendatario, y este arbitrio no supone ni mucho menos convención viciosa... En el Derecho civil español, el artículo 1.256, al referirse al contrato en general, abraza las dos grandes modalidades de la obligación, la pura y la condicional. En los casos a que nos venimos refiriendo, media un pacto expreso relativamente a la

---

[1] Manresa, Comentarios al Código Civil Español, t. 8, (4ta. ed. 1908),. pág. 557.

[2] Scaevola, Código Civil, t. 20, págs. 517 y 519 (ed. 1904).

terminación del contrato. Aun cuando se deje así al arbitrio de una de las partes, hay mutuo consentimiento en ello, voluntad bilateral, y, como queda dicho, cae fuera del artículo 1.256, porque las partes obran *dentro* del contrato.

"Caso muy distinto es el del arbitrio de uno de los contratantes *fuera* del contrato; es decir, cuando alguno de ellos quiere romper a su arbitrio, con más propiedad, arbitrariamente, la estipulación contraída. Esto es lo ilícito, lo reprobado por el artículo 1.256, y antes por la jurisprudencia."

El Tribunal Supremo de España, en su Sentencia del 5 de marzo de 1896, 79 Jurisprudencia Civil 425, al considerar la impugnación de un contrato de arrendamiento sin término fijo se expresó así: "ni infringe ... el 1256 del propio Código, inaplicable a la cuestión litigiosa, porque no se trataba de la nulidad del contrato, ni en el contrato se dejó al arbitrio del dueño la validez y cumplimiento de lo contratado".

Habiéndose establecido en el contrato por convenio de las partes que el mismo era sin término fijo cualquiera de ellas podría terminarlo a su arbitrio, con la limitación para el que prestaba el servicio de tener que notificarlo con tres meses de antelación.

Así, fue correcta la actuación del tribunal de instancia al concluir que la demanda no aducía hechos constitutivos de una causa de acción.

El recurrente nos cita *Boulon* v. *Pérez*, 70 D.P.R. 988 (1950) para apuntalar su criterio de que la corte a quo "no debió haber considerado la moción de desestimación." Antes de proseguir en la consideración del caso, parece pertinente apuntar que no es la mejor práctica citar de un caso en la forma que lo hizo el recurrente. Escogió el sílabo 4, parte de una oración del sílabo 2 y el sílabo 3 y los transcribe tal como si fueran parte del texto de la opinión, ocasionando la consiguiente confusión. Cf. *Rundle* v. *Fraticelli*, 60 D.P.R. 255 (1942). A poco que examinemos la opinión emitida en el caso citado por el recurrente encontramos que citando de Moore sostiene que ["u]na demanda puede ser desestimada

mediante moción a ese efecto si claramente carece de méritos. La carencia de méritos puede consistir en la no existencia de una ley que sostenga una reclamación como la que se ha hecho, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la reclamación. Mas una demanda no debe ser desestimada por insuficiencia, a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación."

■■ Reconocemos que la regla imperante es al efecto de que una demanda no debe ser desestimada "a menos que aparezca con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier situación de hechos que pudieran probarse como fundamento de la reclamación".[3] *Cruz* v. *Ortiz*, 74 D.P.R. 321 (1953); *Sinclair Refining Company* v. *Atkinson*, 290 F.2d 312 (7mo. Cir. 1961); *Fitz-Patrick* v. *Commonwealth Oil Company*, 285 F.2d 726 (5to. Cir. 1960); 1 Barron and Holtzoff, *Federal Practice and Procedure*, § 356, pág. 644. Pero como se dijo en *Sacarello* v. *Junta de Retiro*, 75 D.P.R. 267 (1953) "... ello no significa que en todo caso en que se presenta una moción para desestimar de esa naturaleza tenga necesariamente que prevalecer la parte demandante. La anterior regla tiene como excepción aquellos casos en que no obstante la liberalidad con que se interpreten las alegaciones de una demanda, el tribunal al estudiar las mismas queda plenamente convencido de que en su etapa final el demandante no habrá de prevalecer." Véanse, además, *Izquierdo* v. *Izquierdo*, 80 D.P.R. 71 (1957); *Sheaf* v. *Minneapolis, St. P. & S. S. M. R. Co.*, 162 F.2d 110 (8vo. Cir. 1947); Barron and Holtzoff, *op. cit.*, § 356, págs. 649, 650.

Examinadas las alegaciones la realidad es que aquí el tribunal de instancia tuvo ante sí todos los elementos necesarios para hacer una adecuada determinación de la contro-

---

[3] Ver redacción Regla 10.2(5) Proc. Civil 1958.

versia existente entre las partes. Claramente existían las circunstancias que Moore apunta, según expusimos en *Boulon*, deben coincidir para que proceda una moción para desestimar. Y si eso era así, ¿qué se adelantaba con posponer la decisión del pleito? Copiamos de *Duhame* v. *United States*, 119 F. Supp. 192 (Ct. Cl., 1954):

"No hay controversia sobre los hechos pertinentes necesarios para resolver el caso en sus méritos, y como la única cuestión envuelta es una de derecho, o sea, la interpretación de una cláusula de un contrato, entendemos que es un caso donde procede una sentencia por las alegaciones."

No se cometieron los errores apuntados. *Se confirmará la sentencia que dictó el Tribunal Superior, Sala de San Juan, el 25 de febrero de 1958.*

