*878 TEXTO COMPLETO DE LA SENTENCIA
El 12 de noviembre de 1999, la Autoridad de Energía Eléctrica suscribió un convenio colectivo con la Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER). El Artículo L de este acuerdo disponía:

“Las partes acuerdan que este Convenio Colectivo comenzará a regir a partir del 14 de noviembre de 1999 y estará en vigor hasta el 14 de noviembre de 2005.

Este Convenio continuará en vigor por años subsiguientes, con todas sus propiedades, a menos que una de las partes notifique por escrito a la otra su deseo de modificarlo a más tardar ocho (8) meses antes de su vencimiento. A más tardar treinta (30) días después de dicha notificación, la parte que interese modificar el convenio someterá por escrito a la otra parte las enmiendas a discutirse. Las partes, además, acuerdan que para en caso que haya interés de enmendar el Convenio, comenzar a negociar a más tardar treinta (30) días después de sometidas por escrito las enmiendas.

Las partes, por último, acuerdan que las disposiciones del Convenio Colectivo para el período del 14 de noviembre de 1999 hasta el 14 de noviembre del 2005 continuarán en vigor con todas sus propiedades hasta negociarse un nuevo Convenio Colectivo y hasta la fecha en que entren en vigor las nuevas disposiciones. ” (Énfasis nuestro.)
El convenio, además, detallaba el proceso que debía utilizarse en casos disciplinarios contra miembros de la UTIER. Conforme a la Sección 3 del Artículo XLI, como norma general, el trabajador tendría derecho a solicitar una vista formal ante un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo en casos que se le formularan cargos por infracción a las Reglas de Conducta. Como excepción, la Sección 6 de dicho artículo indicaba:

“(A) Solamente será causa para suspensión sumaria de empleo y sueldo antes de la celebración de la vista formal, los cargos por desfalco, hurto, escalamiento, mal uso de fondos de la Autoridad, uso reincidente e ilegal de sustancias controladas o negarse a someterse a un programa de rehabilitación, o cuando hayan motivos razonables de que existe el peligro real de destrucción para la propiedad de Energía Eléctrica o la vida de cualquiera de sus empleados.

(B) Todo caso disciplinario predicado en tales causales, así como en aquellos casos contemplados en el Artículo XIX, Licencia por Accidente de Trabajo, se ventilará ante los oficiales examinadores seleccionados por las partes, de conformidad a los términos de este Artículo. ”

Sobre los Oficiales Examinadores, el convenio disponía:

“Las partes acuerdan establecer una lista de nueve (9) oficiales examinadores. Dichos oficiales examinadores serán ex jueces de los Tribunales de Justicia del Estado Libre Asociado de Puerto Rico.

La lista acordada podrá ser revisada cada dos años, previa solicitud de una de las partes. Dicha solicitud deberá formalizarse por lo menos noventa (90) días con antelación al vencimiento de dicho término. De no mediar tal solicitud, la lista quedará renovada automáticamente por un período similar [...].

Mientras no se negocie una nueva lista, la lista continuará vigente y los casos asignados o pendientes ante todos los oficiales examinadores continuarán su trámite normal. ”

Transcurrido el término de vigencia del convenio, Energía Eléctrica y la UTIER comenzaron a negociar el próximo acuerdo. Pero el 11 de diciembre de 2006, Energía Eléctrica declaró vencido el convenio de 1999 por *879 alegadamente existir un “impasse” en el proceso de negociación colectiva. Como parte de dicha decisión, dejó sin efecto las disposiciones relativas a los procedimientos disciplinarios contra los empleados organizados. Indicó que, por no existir un convenio vigente, a los miembros de la UTIER ahora le serían aplicables las normas y procedimientos disciplinarios de los empleados gerenciales.
Ante esta decisión, en febrero y marzo de 2007, la UTIER presentó dos cargos por práctica ilícita ante la Junta de Relaciones del Trabajo. Alegó que Energía Eléctrica había actuado ilegalmente al decretar vencido el convenio, en violación al Artículo L de dicho acuerdo. Además, señaló que Energía Eléctrica estaba violando el debido proceso de ley de los trabajadores al aplicarle las normas de los empleados gerenciales en vez de los mecanismos detallados en el Convenio.
Pendiente la resolución de estas querellas, el 14 de diciembre de 2007, Energía Eléctrica notificó al empleado Hector Zalduondo Rodríguez la formulación de varios cargos en su contra. Le imputó violar la Regla 29 de Conducta, que conlleva “ocultar o tergiversar los hechos o hacer declaraciones falsas. ” Según Energía Eléctrica, Zalduondo Rodríguez ocultó hechos ocurridos el día 9 de octubre de 2007 “para evitar que se descubriera que el Sr. Rodolfo Torres abandonó sus deberes sin haber obtenido anticipadamente autorización ” y “realizó declaraciones falsas al momento de hacer su registro en la caseta del guardia de seguridad haciéndose pasar por el Sr. Torres para que de esta forma se registrara dicha entrada a nombre del Sr. Torres. ”
Energía Eléctrica procedió a designar como oficial examinador al licenciado Héctor Velázquez Hernández. El licenciado Velázquez no estaba incluido en la lista de oficiales examinadores preseleccionados por las partes conforme a la Sección 6 del Artículo XLI del Convenio Colectivo. Ante esta situación, el 7 de mayo de 2008, Zalduondo Rodríguez presentó una extensa “Moción sobre Falta de Jurisdicción y/o Solicitud de Paralización de los Procedimientos.” Alegó que el oficial examinador nombrado por Energía Eléctrica carecía de jurisdicción para atender la controversia. Señaló que el Convenio delegaba jurisdicción a los oficiales examinadores para atender solamente las vistas de suspensión sumaria relacionadas a las infracciones detalladas en el inciso (A) de la Sección 6 del Artículo XLI. Indicó que, de no estar presente una de esas infracciones, el Convenio requería que la controversia fuera resuelta por un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo.
Zalduondo Rodríguez argüyó además que el oficial examinador no había sido nombrado conforme al Convenio Colectivo. Señaló que el convenio no autorizaba la designación unilateral de oficiales examinadores; éstos tenían que ser seleccionados por acuerdo común luego de un proceso en el cual participaran tanto Energía Eléctrica como la UTIER. Indicó que en este caso, Energía Eléctrica nombró unilateralmente al licenciado Velázquez Hernández, aunque éste no había sido aprobado como oficial examinador por la UTIER. Por lo tanto, éste carecía de jurisdicción para resolver la querella contra Zalduondo Rodríguez.
Energía Eléctrica, como respuesta, alegó que su Director Ejecutivo tenía plena autoridad para declarar vencido el Convenio Colectivo ante la existencia de un “impasse” en las negociaciones. Según expuso:

“Es principio rector reiterado por la jurisprudencia, el hecho de que un Convenio Colectivo no puede ser eterno, atando a una de las partes de manera arbitraria e injustificada a mantenerse en una relación contractual que no ha podido modificarse por la mala fe de una de las partes en el proceso de negociación. Esta norma es vigente, aun cuando exista una cláusula de renovación automática, como es el caso de autos. ”

Examinados los argumentos de las partes, el oficial examinador emitió Resolución el 28 de julio de 2008. Determinó que fue válida la actuación de Energía Eléctrica al declarar vencido el convenio colectivo. Expresó:

“Es evidente que una vez la A.E.E. declaró vencido el Convenio Colectivo, cuya corrección tenemos que 
*880
presumir, dejó inoperante el mismo incluyendo los procedimientos disciplinarios allí contemplados. Al quedar sin efecto la ley que cobijaba a los empleados de la UTIER, dichos trabajadores quedaron automáticamente protegidos por las disposiciones del régimen general contemplado en el Manual Administrativo. Por disposición expresa del Manual Administrativo, éste le es de aplicación a los empleados unionados de la UTIER en todo momento en que no estén cobijados por el Convenio Colectivo. ”

El oficial examinador rechazó que la Junta de Relaciones de Trabajo fuera el único organismo con jurisdicción sobre la controversia. Indicó:

“Resolvemos, pues, que la presentación de la querella ante la Junta de Relaciones del Trabajo por parte de la UTIER no justifica la desestimación y mucho menos la paralización de los procedimientos seguidos en el caso de epígrafe. Resolver lo contrario caería en lo absurdo. La prolongación indefinida a la solución de los casos disciplinarios tiene un efecto sobre los servicios que dicha empresa viene obligada a ofrecer a sus consumidores. Las normas de disciplina tienen que observarse y resolverse con diligencia en beneficio de todos los intereses envueltos. Dejar de actuar o la inobservancia de atender los procedimientos disciplinarios, a nuestro juicio, crearía un disloque institucional, poniendo en riesgo la seguridad, el orden y la eficiencia de la AEE, así como la de todos sus empleados. ”

Inconforme, la UTIER acude en revisión ante este Tribunal. Le imputa una serie de errores al oficial examinador. Alega, en esencia, que éste carecía de jurisdicción para intervenir en la controversia por no haberse seguido el proceso disciplinario detallado en el Convenio Colectivo. Según la UTIER, Energía Eléctrica no tenía discreción para unilateralmente declarar vencido el convenio cuando éste contenía una cláusula que garantizaba su vigencia durante el período de negociaciones.
Concedimos término a Energía Eléctrica para expresarse sobre el recurso de la UTIER. Compareció y alegó que este Tribunal debía de abstenerse de emitir una decisión sobre las alegaciones de la UTIER hasta que la Junta se expresara sobre los cargos de práctica ilícita pendientes para su consideración. De lo contrario, indicó, “se abrogaría la jurisdicción de la Junta, resolviendo colateralmente, como ya hemos expresado, las controversias pendientes ante ese organismo administrativo, sin consideración a la facultad cuasi-judicial de ese organismo administrativo para investigar y determinar si en realidad se trata de actuaciones ilegales por parte del patrono. ”
I
Los convenios colectivos representan la ley entre las partes, siempre y cuando sus disposiciones no sean contrarias a la ley, la moral o el orden público. J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581, 592 (1990). Por su naturaleza contractual, es de aplicación a la negociación colectiva lo pautado en el Art. 1210 del Código Civil, 31 L.P.R.A., see. 3375:

“Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. ”

Esta obligación de cumplir con lo pactado se fundamenta esencialmente en el principio de la buena fe, la cual exige no defraudar la confianza que otros han puesto en una promesa o condición. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 852 (1991). La buena fe contractual también es un fundamento de la norma que dispone que “la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes.” Art. 1208 del Código Civil, 31 L.P.R.A., see. 3373.
El Artículo L del convenio colectivo entre Energía Eléctrica y la UTIER establece, en lo pertinente:
*881 “Las partes, por último, acuerdan que las disposiciones del Convenio Colectivo para el período del 14 de noviembre de 1999 hasta el 14 de noviembre del 2005 continuarán en vigor con todas sus propiedades hasta negociarse un nuevo Convenio Colectivo y hasta la fecha en que entren en vigor las nuevas disposiciones.” (Énfasis nuestro.)
Esta disposición indica claramente que el Convenio mantiene pleno vigor hasta tanto se negocie efectivamente un nuevo acuerdo. Es razonable concluir que dicha cláusula L se incluyó en el Convenio para proteger los derechos de las partes en caso que no se llegara a un nuevo acuerdo después del 14 de noviembre de 2005, en que terminara el Convenio. Tanto Energía Eléctrica como la UTIER querían evitar que se creara un estado de incertidumbre y tensión en la relación obrero-patronal de llegar la fecha límite del convenio y no haberse completado el proceso de negociación colectiva. Por esa razón, acordaron que los derechos garantizados en el convenio quedarían vigentes hasta que entrara en vigor el acuerdo que los reemplazara. Energía Eléctrica, al suscribir la cláusula de extensión del Convenio, obtuvo una garantía de un valor esencial en este campo del derecho: la llamada paz industrial.
Energía Eléctrica trató la disposición sobre extensión del Convenio como si estableciera un obligación sin término fijo que pudiera ser resuelta por cualquiera de las partes en cualquier momento. Figueroa Pinero v. Miranda & Eguía, 83 D.P.R. 554 (1961). Pero esa prerrogativa puede existir dependiendo de los términos del contrato mismo. Id., a la pág. 556. Y la disposición particular del contrato en cuestión, que es la Cláusula L, establece un término fijo: “Las partes, por último, acuerdan que las disposiciones del Convenio Colectivo para el período del 14 de noviembre de 1999 hasta el 14 de noviembre del 2005 continuarán en vigor con todas sus propiedades hasta negociarse un nuevo Convenio Colectivo y hasta la fecha en que entren en vigor las nuevas disposiciones. ” (Énfasis nuestro)
Energía Eléctrica está obligada a negociar las condiciones de empleo de sus trabajadores y trabajadoras, entre las cuales están las medidas y procesos disciplinarios. No tiene ella la prerrogativa de declarar un “impasse” y actuar sin sujeción a sus obligaciones contraídas.
II
Energía Eléctrica plantea que la UTIER no ha agotado los remedios administrativos; que este Tribunal debe abstenerse de emitir una decisión hasta que la Junta de Relaciones del Trabajo se exprese sobreda controversia ante su consideración.
Ante la Junta de Relaciones del Trabajo está el asunto de si la cancelación unilateral del Convenio Colectivo, y las acciones de Energía Eléctrica en consecuencia, son práctica ilícita. Pero el recurrente Zalduondo Rodríguez no tiene porqué esperar a esa determinación para detener el proceso que se sigue en su contra bajo un reglamento y unas condiciones que no corresponden con sus derechos adquiridos al amparo del Convenio. Su proceso no se conduce bajo la jurisdicción de la Junta de Relaciones del Trabajo. Se lleva a cabo bajo una autoridad que ha asumido Energía Eléctrica dentro de su jurisdicción administrativa directa.
Estamos en presencia de una determinación interlocutoria en un proceso administrativo seguido por Energía Eléctrica contra un trabajador. Éste está protegido por los términos del Convenio Colectivo. Según el documento, el caso debió someterse a un árbitro del Negociado de Conciliación y Arbitraje de conformidad con la Sección 3 del Artículo XLI. Pero Energía Eléctrica optó por otro proceso. Nombró, fuera de Convenio, un examinador. Éste tomó la determinación interlocutoria de jurisdicción.
Como norma general, las resoluciones interlocutorias de las agencias administrativas no admiten revisión judicial. En J. Exam. Tec. Méd. v. Elias et al., 144 D.P.R. 483, 490 (1997), se interpretó la See. 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A., see. 2173, que dispone la única excepción a esa norma. Sólo se puede acudir en revisión judicial de una decisión administrativa interlocutoria “cuando sea un claro *882 caso de falta de jurisdicción de la agencia”. En dicho precedente, a la pág. 492, nuestro más alto foro indica que “sería injusto requerir que una parte tenga que litigar un caso en una agencia sin jurisdicción, únicamente para cumplir con el requisito de finalidad. ”
Es injusto requerirle al recurrente Zalduondo Rodríguez que siga sometido a un proceso contra su persona, en lo que la Junta de Relaciones del Trabajo adjudica si la conducta institucional de Energía Eléctrica es práctica ilícita. Está claro como el agua pura o el aire puro, que Energía Eléctrica está obligada por los términos del Convenio Colectivo, “hasta negociarse un nuevo Convenio Colectivo y hasta la fecha en que entren en vigor las nuevas disposiciones. ” Bajo ese acuerdo, la agencia no tiene la jurisdicción para disponer del caso de Zalduondo Rodríguez. Tampoco la tiene la Junta de Relaciones del Trabajo. La jurisdicción es del Negociado de Conciliación y Arbitraje del Departamento del Trabajo.
En virtud de lo expuesto, se revoca la Resolución impugnada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones