CATALINO FERRER, ETC., demandantes y recurrentes, *v.* EDGARDO LEBRÓN GARCÍA, ETC., demandados y recurridos.

*Número:* R-74-312      *Resuelto:* 25 de marzo de 1975

A. *J. Amadeo Murga,* abogado de los recurrentes; *Alfonso Miranda Cárdenas, Angel R. de Corral* y *Guillermo Silva Janer,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Envuelve este caso la interpretación del límite aplicable de una póliza de seguro contra accidentes de automóvil. La codemandada recurrida se obligó con el codemandado recurrido, en la versión original de la póliza:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: bodily injury, sickness or disease, including death therefrom, hereinafter called 'bodily injury', sustained by any person. . . ." (sec. 1)

El límite de la responsabilidad se fijó en $25,000.00 por persona, hasta un máximo de $50,000.00 por accidente o evento (*occurrence*). Sobre este particular dispuso la póliza:

"The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence. . . ." (sec. 7)

La demanda en este pleito se instó por el esposo e hijos de la señora J. C. de Ferrer, quien falleció instantáneamente al ser arrollada por el automóvil del asegurado recurrido mientras intentaba cruzar una carretera. Su esposo y dos de sus hijos estaban en las inmediaciones del lugar al ocurrir el accidente: Los tres experimentaron, según determinación del tribunal de instancia; "angustias físicas y mentales." A una hija, de treinta y un años de edad, se le llevó al hospital y se le proporcionaron calmantes. Se privó a todos los demandantes de la compañía y el cariño del familiar perdido. Ninguna persona, fuera de la difunta, sufrió lesiones corporales directas.

Determinada la negligencia del conductor recurrido por el tribunal de instancia, se dictó sentencia a favor de los demandantes por la suma de $100,000. A la compañía aseguradora se le halló responsable hasta el límite de $25,000.00, más las costas, intereses y honorarios de abogado. Se ha recurrido ante nos en súplica de que se modifique la sentencia para que la compañía aseguradora recurrida responda por la suma máxima de $50,000. El problema de interpretación planteado es novel en esta jurisdicción.

Las cláusulas que motivan esta controversia son representativas de las pólizas de esta naturaleza que usualmente se expiden, con algunas variantes, en Estados Unidos. Véase el espécimen copiado en Keeton, *Insurance Law*, West Publishing Co., 1971, pág. 653 y ss. Si acaso, es más explícito el modelo utilizado en Puerto Rico, en cuanto aclara mediante la enumeración no taxativa de ejemplos, la frase "todos los daños" que en él se utiliza, expresando que "El límite para responsabilidad corporal aplicable a 'cada persona' constituye el límite de responsabilidad de la compañía por *todos los daños, inclusive aquéllos incurridos por cuido y pérdida de servicios, resultantes del daño corporal sufrido por una persona como consecuencia de un accidente. . . ."* (Bastardillas y traducción nuestras.)

██ Bajo el lenguaje empleado se hace aún más nítida una distinción central, reconocida generalmente, para la recta interpretación de la póliza que nos concierne: la diferencia entre los daños directos y los daños indirectos o resultantes. Si un automóvil arrolla a una persona, es de esperar que ello le cause grave angustia mental a sus familiares, gastos por su cuido, de no fallecer de inmediato, y daños por pérdida de servicios. Estos son daños indirectos; fluyen de la lesión corporal primaria que se le inflige a una sola persona. Para justificar la utilización del límite de $50,000.00 por cada accidente o evento es necesario que más de una persona sufra daños corporales directos; no basta con la prueba de daños resultantes. Los contratos de seguro, por ser de adhesión, se interpretan liberalmente a favor del asegurado, *Rosario v. Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759, 765 (1968), pero si el lenguaje es claro no pueden violentarse obligaciones contraídas al amparo de la ley. *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91 (1974).

El grueso de las autoridades respalda la distinción señalada y el análisis consiguiente de la cláusula aquí envuelta. 15 Couch, *On Insurance 2d*, sec. 56:44; 8 Appleman, *Insurance Law and Practice*, sec. 4893; 8 Blashfield, *Automobile Law and Practice*, sec. 345.2, págs. 458–459; *New Amsterdam Casualty Co. v. Hart*, 16 So.2d 118 (Fla. 1943); *Clark v. Hartford Accident and Indemnity Co.*, 457 S.W.2d 35 (Tenn. 1970); *Smith v. State Farm Mutual Auto Ins. Co.*, 477 S.W. 2d 186 (Ark. 1972).

██ En Puerto Rico hemos establecido hace años la recobrabilidad de daños mentales, *Cirino v. Fuentes Fluviales*, 91 D.P.R. 608, 617 (1964), derecho todavía emergente en muchos estados de Estados Unidos. *Comment, Negligently Inflicted Mental Distress: The Case for an Independent Tort*, 59 Geo. L. Rev. 1237 (1971). Los daños mentales son daños resultantes o indirectos. Su efecto no es alterar el límite simple de la póliza y requerir el uso del límite máximo, al menos en situa-

ciones como la presente. *Commercial Union Insurance Co.* v. *González Rivera,* 358 F.2d 480 (1st Cir. 1966). No nos pronunciamos, ya que el asunto no se plantea en el contexto de hechos que provocó la actual controversia, sobre si puede llegarse a un resultado distinto cuando los daños mentales son de tal gravedad que causen lesiones corporales constitutivas de daño directo o primario. Véase: *Employers Casualty Insurance Co.* v. *Foust,* 105 Cal. Rptr. 505 (1972).

■ Respecto a la concesión de intereses y costas en exceso del límite simple de la póliza, el poder de los tribunales para concederlos está establecido. 8 Appleman, *op. cit.* 323. Igual regla es aplicable a los honorarios de abogado que se le impusieron a la compañía aseguradora, asunto que ésta no cuestiona.

*Se confirmará en consecuencia la sentencia dictada por el tribunal de instancia.*

El Juez Asociado, Señor Angel M. Martín, concurre en el resultado sin opinión. El Juez Asociado, Señor Carlos J. Irizarry Yunqué, disiente con opinión.

—O—

Opinión disidente del Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 25 de marzo de 1975

Con todo respeto disiento. A mi juicio tres factores militan contra la interpretación que se da a la cláusula de la póliza que aquí nos ocupa. Son ellos, primero, la norma de hermenéutica respecto de los contratos de adhesión; segundo, el estado de nuestro Derecho en materia de la responsabilidad que nace de culpa y negligencia, y tercero, las actuales corrientes en las jurisdicciones estatales norteamericanas, que es donde se origina el tipo de contrato que es objeto de este caso.

## I

La póliza de seguro de automóviles que aquí nos concierne es un típico contrato de adhesión. Sus cláusulas no revelan acuerdos entre las partes contratantes logrados en virtud de negociaciones y concesiones mutuas. Es un contrato impreso, en este caso en el idioma inglés, en virtud del cual la compañía aseguradora se obliga a responder por el asegurado, hasta los límites que allí se mencionan, por daños y perjuicios resultantes de la operación de un determinado automóvil. El asegurado paga la prima que la compañía fija en el contrato y asume que está protegido, hasta los máximos de cubierta especificados en la póliza. Los términos del contrato en ocasiones resultan ininteligibles para el asegurado, dificultad de que muchas veces ni los abogados están exentos. Por todo ello hemos dicho en reiteradas ocasiones que estos contratos se interpretan liberalmente para el asegurado y restrictivamente para el asegurador. *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91 (1974); *Rosario* v. *Atl. Southern Ins. Co.*, 95 D.P.R. 759, 765 (1968); *Pérez Escobar* v. *Collado*, 90 D.P.R. 806 (1964); *Barreras* v. *Santana*, 87 D.P.R. 227 (1963).

Por supuesto, cuando las cláusulas de un contrato son claras no es necesario recurrir a reglas de hermenéutica para su interpretación. Se interpreta lo que es falto de claridad. ¿Son claras, y exentas de ambigüedad las disposiciones que aquí nos ocupan? Para mí no lo son. De hecho, hay disparidad en la interpretación de cláusulas similares por los Tribunales del Continente, que es donde se redactan y de donde provienen estos contratos, como veremos más adelante.

## —II—

En lo que respecta al Derecho civil, Puerto Rico no es una jurisdicción de la llamada *common law*. No lo es tampoco en el campo de la responsabilidad que nace de culpa o negligencia, no obstante que en muchas ocasiones hemos aplicado aquí

doctrinas importadas de aquel sistema, como la *contributory negligence*, el *last clear chance*, el *attractive nuisance*, y las reglas del *trespasser*, del *licensee* y del *invitee*, para mencionar algunas. El Derecho patrio en esta materia nos viene de España y tiene su fuente principal en el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, que proviene del 1902 del Código Civil español.

En la *common law* no se concebía que fueran compensables los daños morales cuando éstos no provenían de un daño físico. Es la vieja teoría del "impacto" físico, que rechazamos expresamente hace 30 años en *Rivera* v. *Rossi*, 64 D.P.R. 718 (1945), en una iluminadora opinión suscrita por aquel gran jurista, Don Angel R. de Jesús. Hasta entonces, y siguiendo una larga lista de casos que se inició en 1909 con *Zalduondo* v. *Sánchez*, 15 D.P.R. 231, se habían concedido daños morales únicamente cuando conjuntamente se reclamaba por daños físicos. *Rivera* v. *Rossi*, al señalar que el Art. 1802 es la "fuente de la acción de daños y perjuicios por culpa o negligencia en esta jurisdicción," resolvió que como el 1802 no distingue entre daños físicos y morales, no cabe reconocer limitaciones al derecho a recobrar los segundos por ausencia de los primeros. Esa es la doctrina vigente en Puerto Rico. Véanse *Concepción Guzmán* v. *A.F.F.*, 92 D.P.R. 488 (1965); *Infante* v. *Leith*, 85 D.P.R. 26 (1962); *Muriel* v. *Suazo*, 72 D.P.R. 370 (1951).

El Derecho vernáculo nuestro ha consagrado también el principio de que todo el que sufre algún daño con motivo de la muerte de una persona a causa de la culpa o negligencia de un tercero tiene derecho a que el causante del daño le compense por ello, no importa la ausencia de parentesco entre el que sufre el daño y la persona fallecida. *Cirino* v. *Fuentes Fluviales*, 91 D.P.R. 608 (1964).

Siendo ese el estado de nuestro Derecho no puedo estar conforme con que se limite la cubierta de una póliza de seguro para negarle protección a un asegurado que al asegurarse

tenía derecho a presumir que la protección que pagaba cubriría la responsabilidad que le es exigible bajo ese estado de Derecho. Ese estado de nuestro Derecho me impide conceder que cuando la póliza que aquí nos ocupa dice en su sección primera que la aseguradora se obliga a pagar "todas las sumas que el asegurado venga obligado a pagar" (*all sums which the insured shall become legally obligated to pay*) como consecuencia de daños corporales "sufridos por cualquier persona" (*because of bodily injury . . . sustained by any person*), deba entenderse que la compañía no responde de "todas las sumas" y sí de algunas, y que no responde por daños sufridos por "cualquier persona" y sí de los causados a una sola persona.

—III—

Los daños por los que se reclama en este caso son los sufridos por el esposo y los hijos de una señora que falleció al ser arrollada por un automóvil. El tribunal sentenciador valoró los daños en $100,000, y condenó al dueño del automóvil a pagarlos, limitando la responsabilidad de la compañía aseguradora a $25,000, cantidad máxima de cubierta por daños a cualquier persona (*to any person*). La interpretación restrictiva de la póliza es que "cualquier persona" significa en este caso la señora que sufrió el impacto y murió como consecuencia de ello. A mi entender "cualquier persona" es todo aquél que sufrió daños como consecuencia del accidente, no importa quien recibiera el impacto físico. Estas dos posiciones, la interpretación restrictiva y la interpretación liberal, han sido adoptadas por unos y otros tribunales estatales estadounidenses. Creo que es innecesario aportar citas para sostener que la póliza aquí concernida, expedida por una compañía del Hartford Insurance Group, se originó y su redacción se adoptó en una de esas jurisdicciones. Casi podemos tomar conocimiento judicial de ese hecho.

Los daños sufridos por los reclamantes en este caso son los

que han sido denominados en los diferentes Estados de la Unión como *consequential damages,* o daños consiguientes o resultantes. Veamos lo que sobre esto dice Appleman (*Insurance Law and Practice,* tomo 8, sec. 4893) :

"Parece no haber controversia en cuanto a que los daños consiguientes del propio reclamante están cubiertos por las pólizas de responsabilidad. Pero cuando se trata de daños consiguientes sufridos por un cónyuge o uno de los padres, no hay uniformidad en las decisiones respecto de si tales daños están cubiertos por la póliza. Se ha sostenido que una póliza que obliga al asegurador a pagar cualquier pérdida por responsabilidad impuesta por ley sobre el asegurado por daños debidos a 'lesiones corporales' cubre reclamaciones por daños consiguientes. Y se llegó al mismo resultado bajo una póliza que cubría 'reclamaciones basadas en lesiones a o muerte de una persona.' Bajo un estatuto de Nueva Jersey, se sostuvo que un esposo a quien en sentencia se le reconoció el derecho a recobrar separadamente en un pleito suyo y de su esposa, por daños sufridos por ella en un choque, tenía derecho a resarcirse del asegurador del causante del daño. Y en Nueva Hampshire se ha sostenido que la pérdida de consorcio está cubierta bajo una póliza de responsabilidad, aunque tal privación no era una lesión personal al esposo en el sentido en que tales palabras se usaban en la póliza." (1)

Más adelante en la misma sec. 4893 señala Appleman:

". . . Luisiana ha reconocido el derecho a reparación por

---

(1) "Sec. 4893. Consequential Damages

"There would seem to be no question that consequential damages to the claimant himself are covered by liability policies. But when we come to consequential damages sustained by a spouse or a parent, the decisions are not uniform as to whether such injuries are covered by the policy. It has been held that a policy obligating the insurer to pay any loss for liability imposed by law upon the insured for damages on account of 'bodily injuries' covers claims for consequential damages. And the same result was reached where a policy covered 'claims growing out of injuries to or death of one person'. Under a New Jersey statute, a husband recovering a separate judgment in a suit by himself and his wife, for injuries sustained by the wife in a collision was allowed to recover from the tortfeasor's insurer. And New Hampshire has stated that a husband's loss of consortium is within the coverage of a liability policy, although such deprivation was not a bodily injury to the husband in the sense in which such words were used in the policy."

daños consiguientes cuando la póliza cubre 'pérdida debida a daños a cualquier persona.' Lo mismo se resolvió en Washington respecto de una póliza que se refiere a 'toda persona lesionada.' *Para resumir, los tribunales reconocen que el asegurado confía estar protegido contra tales pérdidas, y con toda razón; y la fraseología que se use en la póliza es inmaterial para llegar al resultado de reconocer cubierta."* (Énfasis suplido.) (²)

Blashfield (*Automobile Law and Practice,* tomo 8, sec. 345.2), señala que, cuando una póliza contiene un límite de cubierta por "daños corporales a una persona" (*bodily injury to one person*), se ha resuelto que la frase "una persona" se refiere a la persona lesionada, y a los que sufran daños como consecuencia de los causados a esa persona. Véase que se refiere a pólizas que hablan de "daño corporal" (*bodily injury*). A renglón seguido dice Blashfield:

"Sin embargo, cuando la póliza limita la cantidad a pagar a daños personales en vez de daños corporales a una persona, se ha sostenido que los daños causados a la esposa y la pérdida de su consorcio por su esposo son daños personales causados a más de una persona." (³)

Es cierto que la póliza de este caso se refiere a "daño corporal" (*bodily injury*) y no a "daño personal" (*personal injury*). Esa diferencia, sin embargo, no tiene importancia. Así lo señala Appleman en su indicada obra, citando *American Fidelity & Casualty Co.* v. *Mahon,* 185 A. 330, 332 (Maryland, 1936). Véase *Trombley* v. *Iowa Nat. Mut. Ins. Co.,* 70 So.2d

---

(²) El texto en inglés es como sigue:

"Louisiana has allowed a recovery for consequential injuries where the policy covered 'loss on account of injury to any person'. And the same was true in Washington, where a policy spoke of 'every person injured'. In short, the courts recognize that the insured expects to be protected against such a loss, and rightfully so; and the form of policy wording is now immaterial in accomplishing the result of affording coverage."

(³) El texto en inglés dice:

"Where, however, the policy limits the amount payable for personal injury rather than bodily injury to one person, it has been held that the wife's injury and the husband's loss of consortium are personal injuries to more than one person."

319 (Florida), citado en 15 Couch, *On Insurance 2d,* sec. 56:44. Allí, bajo una póliza que limitaba a $5,000 por daños corporales (*bodily injuries*) la responsabilidad de la aseguradora, y a $10,000 por accidente, se reconoció la obligación de ésta de pagar $5,000 al esposo, a quien se reconocieron en sentencia daños por $25,000 por pérdida de la compañía, servicios y consorcio de su esposa, no obstante que la esposa recobró $2,000 de la aseguradora, por sus propios daños.

El argumento frecuentemente esgrimido contra la concesión de indemnización por daños consiguientes a más de una persona limitando a cada una al máximo estipulado en la póliza por daños a una persona es el de evitar la multiplicidad de pleitos y desalentar el que se hagan reclamaciones fraudulentas. En ese mismo argumento se amparan los defensores de la teoría del "impacto físico," es decir, los que niegan el derecho al resarcimiento por daños morales que no vayan acompañados de lesiones corporales. En el antes citado caso de *Rivera* v. *Rossi,* nos ocupamos de ellos al decir (págs. 725–726) :

"A estos argumentos podríamos replicar que las cortes no deben negar reparación por daños realmente sufridos simplemente para evitar que haya un aumento de pleitos. Tampoco deben negar un remedio a quien en justicia lo merece sencillamente porque pueda presentarse un número de reclamaciones fraudulentas. Las reclamaciones fraudulentas se dan en todas las ramas del Derecho y es el deber de las cortes distinguir las reclamaciones legítimas de las falsas. La cuestión se reduciría a un problema de evidencia. Si la existencia del acto torticero, que se alega produjo el daño moral, se prueba satisfactoriamente y es de tal naturaleza que razonablemente debió causar el daño moral, queda excluida de ese modo la posibilidad del fraude y la simulación, y no hay motivo para negar la reparación. Concedemos que los daños morales como los del presente caso no son susceptibles de una exacta compensación, pero la misma razón podría aducirse cuando se reclaman daños físicos y a la vez daños morales." (Citas.)

Para resumir, el asegurado no debe ser obligado en este caso a responderle a todos los demandantes por los daños que cada uno ha sufrido como consecuencia de la muerte de la señora Ferrer, interpretando restrictivamente la póliza. Su compañía aseguradora debía saber, al otorgarse la póliza, que bajo el estado de nuestro Derecho, todo el que sufre daño, no importa si son consecuencia de los daños causados a otra persona, tiene derecho a ser resarcido si al caso aplica el Art. 1802 del Código Civil. El asegurado pagó por una cubierta a base de un máximo de $25,000 por persona, pero no más de $50,000 por accidente. Varias personas sufrieron daños aquí como consecuencia de un mismo accidente. No debe interpretarse la póliza conforme lo han hecho jurisdicciones estatales norteamericanas que responden a un sistema de Derecho distinto al nuestro, en que priva la tradición civilista del Derecho español.