JOSÉ R. CASANOVA DÍAZ, demandante y recurrido, *v.* PUERTO RICAN–AMERICAN INSURANCE COMPANY, demandada y peticionaria.

*Número:* O-77-287        *Resuelto:* 31 de enero de 1978

690

*Agraít, Otero & Oliveras,* abogados de la Puerto Rican-American Insurance Company; *José R. Casanova Díaz,* por derecho propio y *Joseph L. Martínez Suárez,* abogado del demandante y recurrido.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El 24 de octubre de 1974 la Puerto Rican-American Insurance Company expidió una póliza de seguro de responsabilidad profesional a favor del médico Dr. José R. Casanova Díaz. La póliza estaría vigente por un año, habiendo pagado en su totalidad el asegurado la correspondiente prima. El 13 de marzo de 1975, faltando siete meses para su expiración, dicha compañía aseguradora notificó por correo al Dr. Casanova un aviso de cancelación de la póliza a ser efectivo el 31 de dicho mes. Al protestar el asegurado, le indicó por carta la compañía que se veía obligada a retirarse del mercado en este tipo de seguro "por la experiencia adversa que ha demostrado esta línea de seguro en el pasado." Le aclaró al mismo tiempo que no se refería a la experiencia personal suya. El Dr. Casanova se quejó al Comisionado de Seguros, pero éste sostuvo el poder de la compañía bajo la póliza y el Código de Seguros para actuar como lo hizo. Finalmente el Dr. Casanova instó demanda ante el Tribunal Superior, Sala de San Juan, en que alegó incumplimiento de contrato y reclamó por daños que dijo haber sufrido debido a la falta de cubierta. (¹)

---

(¹) Los alegados daños no se alegaron específicamente en el texto de la demanda. Se intiman en la súplica que se debieron al verse privado de cubierta y enfrentado a lo que llama "la disyuntiva de abandonar su

■ Puerto Rican-American solicitó sentencia sumaria para que se desestimara la demanda. Invocó la cláusula número 11 de la póliza en virtud de la cual podía cancelarla antes de su vencimiento mediante el envío por correo al asegurado a su dirección indicada en la póliza de un aviso escrito que así lo especificara, con no menos de diez días de anticipación a la fecha de efectividad de la cancelación. (²) El tribunal denegó la solicitud. Resolvió que, aunque la cláusula 11 autoriza a la compañía a "rescindir el contrato de seguro unilateralmente," dicha cláusula está reñida con el Art. 11.270 del Código de Seguros, 26 L.P.R.A. sec. 1127, que requiere "causa justificada" para la rescisión unilateral. (³) Incidió. La cláusula 11 no autoriza la rescisión del contrato

práctica quirúrgica, su modus vivendi de muchos años, o a solicitar otra póliza con otra compañía aseguradora con el perjuicio económico para el aquí demandante por el aumento apreciable en la prima de una nueva póliza."

(²) Dicha cláusula dispone textualmente:

"11. CANCELATION: This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing."

(³) El citado Art. 11.270 disponía de la manera siguiente para la fecha de los hechos que dieron origen a este pleito:

"Sec. 1127. Rescisión y cancelación

"(1) Un contrato de seguro podrá rescindirse por cualquiera de las partes por causa justificada y en la forma que se aplica a los contratos en general.

"(2) En adición a este derecho y el procedimiento para la cancelación de un contrato de seguro, bien sea por el asegurador o por el asegurado, según se exprese en la póliza, el Comisionado podrá ordenar la inmediata cancelación de cualquiera póliza obtenida o efectuada en violación de este título, excepto cuando la póliza no fuere por sus términos cancelable por el asegurador y el asegurado no hubiere participado a sabiendas en dicha violación."

y sí su cancelación bajo las condiciones allí pactadas. Ciertamente, el inciso (1) del Art. 11.270 requiere causa justificada para que cualquiera de las partes—la compañía o el asegurado—pueda rescindir el contrato. No prohíbe, sin embargo, la cancelación. Los términos rescisión y cancelación no son sinónimos. Tienen efectos diferentes.

■ El Art. 11.270 contempla tres diversas formas de terminar un contrato de seguro, a saber: la rescisión, a que se refiere el primer inciso; la cancelación conforme se pacte en el contrato, y la cancelación por el Comisionado de Seguros, contempladas en el segundo inciso. La tercera—cancelación por el Comisionado—no nos interesa para los fines que ahora nos ocupan.

El historial legislativo del Código de Seguros—Ley Núm. 77 de 19 de junio de 1957—arroja poca luz en cuanto al Art. 11.270. El Código recoge "el fruto de la experiencia obtenida en diferentes Estados de la Unión, y en otras regiones del Hemisferio, incluyendo, desde luego, la propia experiencia de Puerto Rico . . . ." (⁴) En el proceso de su adopción se revisó la legislación sobre seguros de diferentes Estados, de países latinoamericanos, de Filipinas y de Canadá, para beneficiarse de las experiencias de otras áreas y lograr la mejor legislación que se adaptase a nuestras particulares necesidades. (⁵)

■ El Art. 11.270 no ha sido objeto de nuestra interpretación jurisprudencial. Antes de adoptarse el vigente Código resolvimos en *Arroyo & Valiente* v. *North British & Merc.*, 38 D.P.R. 176 (1928), que una cláusula como la que aquí nos ocupa, que autorizaba a cualquiera de las partes a cancelar el contrato mediante una simple notificación, no violaba el Art. 1223 del entonces vigente Código Civil (1902), hoy Art. 1208, 31 L.P.R.A. sec. 3373, que dice:

---

(⁴)*Diario de Sesiones* (1957), vol. 9, Tomo II, pág. 561.
(⁵)*Diario de Sesiones*, supra, pág. 563.

"La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes."

La redacción del Art. 11.270 no puede interpretarse como que dejó sin efecto esa doctrina. Por el contrario, es evidente que lejos de repudiarla la adoptó al hacer reserva en su segundo inciso del derecho del asegurador y del asegurado a cancelar el contrato "según se exprese en la póliza." Al seguir la doctrina de *Arroyo & Valiente* fue consistente el Legislador con el propósito que informa el citado historial legislativo de recoger el fruto de nuestras propias experiencias, entre otras, para hacer un Código de Seguros ajustado a nuestras propias necesidades y a nuestra particular problemática.

La regla general reconocida en el campo de los seguros en las jurisdicciones norteamericanas es que ni el asegurado ni el asegurador tienen derecho a rescindir ni a cancelar el contrato, excepto si un estatuto lo permite, si el contrato mismo concede esa facultad, si las partes así lo han estipulado expresamente o han consentido expresamente para ello, o si una de las partes ha incumplido el contrato. 17 Couch, *On Insurance*, 2d, sec. 67:1, pág. 394 (1967). Se reconoce que las partes en un contrato de seguro pueden incluir las cláusulas que pluguieren con respecto a la cancelación. 17 Couch, *On Insurance*, 2d, sec. 67:45, pág. 418 (1967). Esta facultad no sería válida, sin embargo, si fuese contraria a la ley, la moral o el orden público. ([6])

La citada Sec. 11.270, como regía al plantearse la situación de hechos que aquí consideramos, recogía esos principios generales. Permitía la rescisión unilateralmente "por causa justificada y en la forma que se aplica a los contratos en general" y permitía la cancelación unilateralmente si así se autorizaba en la póliza. Como hemos visto, la cláusula 11 de la

---

([6]) Dice el Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372: "Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral, ni al orden público."

póliza autorizaba la cancelación por cualquiera de las partes bajo las condiciones y en la forma allí estipuladas.

■ La distinción es importante. La cancelación del contrato termina los derechos y obligaciones de las partes a partir del momento en que es efectiva. 17 Couch, *op. cit.*, sec. 67:19, pág. 403. Sólo opera prospectivamente. 17 Couch, *supra*, sec. 67:22, pág. 405. Una vez cancelada la póliza el asegurado no es responsable del pago de primas posteriores a la cancelación y el asegurador queda libre de toda responsabilidad por hechos que surjan después de ser efectiva la cancelación. 17 Couch, *supra*, sec. 67:20, pag. 404; sec. 67:21, pág. 404; 6A Appleman, *Insurance Law & Practice*, sec. 4197, pág. 620 (1972). La cancelación obliga, para ser válida, a la devolución al asegurado de las primas correspondientes al período que a partir de su efectividad restaría hasta la fecha de expiración de la póliza.(⁷) 3A Appleman, *supra*, sec. 1816, pág. 128 (1967); 6A Appleman, *supra*, sec. 4197, pág. 621 (1972).

■ La rescisión del contrato, a diferencia de la cancelación, lo anula *ab initio*. 17 Couch, *supra*, sec. 67:35, pág. 412. Al quedar rescindido el contrato de seguro las partes se colocan en la misma situación que ocupaban antes de que se efectuara el contrato. Patterson, *Essentials of Insurance Law*, 2da. ed., pág. 380 (1957). En consecuencia, la rescisión obliga al asegurador a devolver al asegurado todas las primas pagadas por éste. Patterson, *supra*, pág. 380; 17 Couch, *supra*, sec. 67:251, pág. 545; 3A Appleman, *supra*, sec. 1832, pág. 148 (1967) y 6A Appleman, *supra*, sec. 4199, pág. 630 (1972). Mientras la facultad de rescindir el contrato emana de la ley o del incumplimiento de las cláusulas en él estipuladas, la facultad para cancelarlo surge del propio contrato,

---

(⁷) En inglés se le denomina *unearned premiums*. Partimos del supuesto que aquí dichas primas fueron devueltas pues no se hace planteamiento alguno por las partes sobre este particular, ni tampoco lo consideró el tribunal de instancia en su resolución.

si la ley no lo prohíbe. La primera es más limitada que la segunda.

La ley aquí aplicable establece como causa de rescisión lo que denomina en términos generales "por causas justificadas" y remite al Código Civil. Se han reconocido como razones válidas para que el asegurador rescinda el contrato, entre otras, el error mutuo, la falsedad en la información suministrada y la ocultación de información. Keeton, *Basic Text on Insurance Law*, sec. 6.9(b) pág. 438 (1971). La rescisión de los contratos en general está regulada en el Código Civil por los Arts. 1242 a 1251, 31 L.P.R.A. secs. 3491 a 3500. Por tratarse en este caso de la cancelación del contrato por la aseguradora, autorizada en su cláusula 11 y no prohibida por ley, y no de un caso de rescisión, procedía dictar sentencia sumaria según solicitado por la demandada recurrente. Así lo intimamos en orden para mostrar causa expedida mediante resolución de 4 de agosto de 1977. La parte recurrida no nos ha persuadido de lo contrario.

El resultado a que hemos llegado no está reñido con el Art. 1208 del Código Civil, ya citado, que dispone que "[la] validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes." Este artículo no prohíbe las cláusulas resolutorias en los contratos. Estas cláusulas, que permiten la terminación del contrato a base de la voluntad de cualquiera de las partes, están en armonía con el principio de libertad en la contratación. *Figueroa Piñero* v. *Miranda & Eguía*, 83 D.P.R. 554, 555–557 (1961); *Arecibo Motors Co.* v. *Caribe Motors Corp.*, 60 D.P.R. 401, 407, 409 (1942); *Clausells* v. *Salas*, 51 D.P.R. 89, 95 (1937); *Arroyo & Valiente* v. *North British & Merc.*, supra, 181–182.

Aunque el contrato de seguro es un típico contrato de adhesión que debe interpretarse liberalmente a favor del asegurado, *Ferrer* v. *Lebrón García*, 103 D.P.R. 600, 603 (1975); *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91, 93 (1974); *Rosario* v. *Atl. Southern Ins. Co. of P.R.*, 95 D.P.R.

759, 765 (1968); *Pérez Escolar* v. *Collado*, 90 D.P.R. 806, 811 (1964); *Barreras* v. *Santana*, 87 D.P.R. 227, 232–233 (1963); *Maryland Casualty Co.* v. *San Juan Racing Assoc. Inc.*, 83 D.P.R. 559, 565–566 (1961), no se trata aquí de una cláusula obscura o ambigua. La adhesión no implica una declaración de nulidad del contrato. *C.R.U.V.* v. *Peña Ubiles*, 95 D.P.R. 311, 314 (1967). La cláusula 11 en virtud de la cual actuó la recurrente es clara y por tanto obligatoria para el asegurado. Véanse *Ferrer* v. *Lebrón García*, supra; *Rivera* v. *Insurance Co. of Puerto Rico*, supra.

▮ El Art. 11.270 del Código de Seguros fue enmendado en su título y en su inciso (1) por la Ley Núm. 32 de 10 de mayo de 1976, con posterioridad al surgimiento de este caso. Después de la enmienda, dice así:

"Artículo 11.270.—Limitación de cancelación por el asegurador.

(1) El asegurador no podrá cancelar un contrato de seguros después de haber estado en vigor por un período de sesenta (60) días o más, excepto por la falta de pago de prima y por aquellos fundamentos que se especifican en la póliza. Disponiéndose que el asegurado podrá solicitar la cancelación del contrato de seguros de acuerdo con los términos especificados en la póliza.

A petición del asegurado el asegurador deberá especificar a aquél los fundamentos para la cancelación. El Comisionado mediante reglamentación determinará los seguros a los cuales aplicará este apartado y el procedimiento a seguir para la cancelación de dichos seguros.

(2) . . . . . . . ."

La enmienda tiene el propósito evidente de limitar la facultad de las compañías de seguros de cancelar unilateralmente las pólizas.[8] Bajo el estado de la ley cuando se otor-

---

[8] Así se desprende del Informe de la Comisión de lo Jurídico Civil del Senado con respecto al P. del S. 1238 que se convirtió en la Ley Núm. 32 de 10 de mayo de 1976. El Informe Conjunto de las Comisiones de lo Jurídico Civil y de Comercio e Industria de la Cámara de Representantes señala, además, el propósito de "reglamentar efectivamente el procedimiento seguido por las compañías aseguradoras para la cancelación de una póliza."

gó el contrato que aquí nos ocupa y cuando fue cancelado por la recurrente, la facultad de ésta para así hacerlo era clara. La actual redacción del Art. 11.270 no puede tener efecto retroactivo. Ello sería contrario a la disposición constitucional que prohíbe que se aprueben leyes que menoscaben las obligaciones contractuales. Carta de Derechos, Art. II, Sec. 7, Constitución del Estado Libre Asociado.

Hasta este momento el Comisionado de Seguros no ha adoptado reglamentación alguna para determinar los seguros a los cuales ha de aplicar la prohibición establecida por la referida enmienda. El alcance de la enmienda, en ausencia de tal reglamentación, es asunto extraño a los planteamientos que aquí consideramos y nos abstenemos por tanto de pronunciarnos sobre el particular.

*Se expedirá el auto y se dictará sentencia por la que se revoque la resolución recurrida y en su lugar se ordene la desestimación de la demanda interpuesta.*

El Juez Asociado Señor Rigau no intervino.