# 2006 DTA 68

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

LUZ E. AYALA NAVARRO
Recurrida

v.

ALBERIC COLÓN AUTO SALES, INC.; UNIVERSAL INSURANCE COMPANY,
MANNY MOE & JACK OF PUERTO RICO H/N/C PEP BOYS
Recurrente

Núm. KLRA-2005-00407

San Juan, Puerto Rico, a 7 de abril de 2006

Panel integrado por su Presidenta, la Juez Peñagarícano Soler,
y los Jueces González Vargas y Rivera Martínez

González Vargas, Troadio, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Universal Insurance Company (en adelante, el recurrente o Universal), acude ante este Tribunal mediante el presente Recurso de Revisión. Nos solicita que revisemos la Resolución emitida por el Departamento de Asuntos del Consumidor, Región de San Juan (en adelante, el D.A.C.O. o la agencia), el 9 de mayo de 2005 y notificada a las partes el 12 de mayo del mismo año. Mediante la misma, la agencia ordenó al recurrente que en el término de 30 días realizara las gestiones necesarias para que el motor del vehículo adquirido por la Sra. Luz Ayala Navarro (en adelante, la recurrida o la Sra. Ayala) sea reparado satisfactoriamente. Por los fundamentos que exponemos a continuación, modificamos la Resolución Recurrida y así modificada, se confirma.

### I

El 26 de agosto de 2002 la Sra. Ayala compró a Alberic Colón Auto Sales, Inc. un vehículo usado marca Kia, modelo Sportage del año 1999. Adquirió el mismo, sin garantía, por lo que suscribió un contrato con advertencias expresas de que lo compraba tal como se hallaba al momento de la compra ("*as is*"). Ese mismo día, la recurrida adquirió una póliza de "*garantía extendida*" con Universal Insurance Co.

Al poco tiempo, el aludido vehículo comenzó a mostrar desperfectos mecánicos. ■ En consecuencia, la Sra. Ayala se comunicó con Universal para que ésta honrara la garantía de servicio. Conforme se desprende de los autos, Universal refirió la recurrida a Pep Boys para que allí se examinara el automóvil.

El 19 de abril de 2003, Pep Boys inspeccionó el vehículo y encontró que tenía el motor tapado. Consecuentemente, recomendó que el motor fuera reemplazado o reparado. Tal reparación fue autorizada por la recurrente; sin embargo, en vista de que Pep Boys no restauraba motores, se envió el motor a un taller de mecánica en Humacao, donde se llevó a cabo la reparación. El 23 de abril de 2003, Pep Boys instaló el motor ya reparado. Posteriormente, el vehículo confrontó nuevamente problemas mecánicos, por lo que volvió a ser llevado a Pep Boys para ser reparado. ■ Finalmente, el 28 de junio de 2003, luego de una evaluación mecánica, se determinó que el motor tenía un liqueo de aceite. Además, se encontró que el sistema de emisiones estaba dañado.

En vista de que los desperfectos mecánicos aún persistían, el 29 de agosto de 2003, la recurrida presentó ante el D.A.C.O. la querella de autos. El 13 de mayo de 2004, el coquerellado Alberic Colón Auto Sales, Inc. presentó su contestación a la querella y negó los hechos esenciales alegados en ella. Además, solicitó la desestimación de la querella en su contra. Por su parte, el 10 de julio de 2004, la recurrente presentó su escrito contestando la querella. En el referido escrito, negó los hechos alegados y planteó entre otras defensas afirmativas, que los defectos señalados por la querellante no estaban cubiertos por la póliza de garantía extendida, que la responsabilidad de la compañía de seguros está limitada por las cláusulas, términos, condiciones, límites y deducibles de la póliza extendida. El 13 de julio de 2004, Pep Boys presentó su contestación a la querella.

Previo a la vista administrativa, la recurrente llevó a cabo una inspección del vehículo con un mecánico automotriz. Éste encontró que el motor tenía un liqueo de aceite en la junta de la tapa de válvulas, el sistema de emisiones no funciona bien y el sistema refrigerante del motor tenía también liqueo.

El 23 de septiembre de 2005 se celebró la vista administrativa en el presente caso. En ella declaró la recurrida y el Sr. Guillermo Feliciano Santiago, testigo de Universal. Así las cosas, el 9 de mayo de 2005, el D. A.C.O. emitió la Resolución recurrida, en la que desestimó la querella contra Alberic Auto Sales, Inc.

Determinó que en cuanto a este coquerellado no había prueba suficiente para establecer una reclamación de vicios ocultos. Sobre la reclamación contra Pep Boys, la agencia también lo liberó de responsabilidad al concluir, *"que no existe una obligación directa con la parte Querellante. Su obligación es con Universal Insurance Company"*. ■ En lo que respecta a la recurrente Universal le ordenó que en el término de 30 días debía asegurarse que la reparación del vehículo de la recurrida fuera satisfactoria. ■

Inconforme, el 13 de junio de 2005, la recurrente presentó el Recurso de Revisión que nos ocupa y formuló los siguientes señalamientos de error:

*"I. Erró el DACO al determinar que Universal debía hacer las gestiones para que el vehículo de la querellante fuera reparado satisfactoriamente, imponiendo a la compareciente la obligación no pactada de asegurarse que la reparación sea satisfactoria.*

*II. Erró el DACO al apreciar la prueba, obviando identificar los desperfectos que están relacionados al malfuncionamiento del sistema de emisiones y que dicha reparación no está cubierta bajo el contrato de servicios.*

*III. Erró el DACO al ordenar que Universal debía hacer las gestiones para que el vehículo de la querellante fuera reparado satisfactoriamente, a pesar que la póliza estaba vencida de acuerdo a sus términos."*

Atendido el recurso que nos ocupa, el 15 de julio de 2005 concedimos a la recurrida un término de 20 días para que expresara su posición en torno al mismo. No habiendo comparecido dentro de dicho plazo, resolvemos sin el beneficio de su comparecencia.

## II

### A. La Revisión Judicial de las Determinaciones de las Agencias Administrativas

Como se sabe, la facultad revisora de los tribunales a las decisiones emitidas por una agencia administrativa es limitada. *"El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho"*. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. ed., Bogotá, Forum, 2001, pág. 534. La función revisora del tribunal, aunque restringida, tiene como propósito fundamental el delimitar la discreción de los organismos administrativos, además de velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *T-JAC Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 80 (1999); *Misión Ind. P. R. v. J.P.*, 146 D.P.R. 64, 129 (1998); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997).

Este ejercicio por parte del tribunal revisor está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, Ley de Procedimiento Administrativo Uniforme (en adelante, L.P.A. U.). 3 L.P.R.A. sec. 2101 *et. seq.* Primero, *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo"*. 3 L.P.R.A. sec. 2175. Segundo, *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal."* *Id.* Es por tanto indispensable que la agencia formule determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.

Es principio cardinal que como tribunal revisor le debemos deferencia a las decisiones de las agencias

administrativas. *Oficina Procuradora Paciente v. Aseguradora MCS, IPA 603*, opinión del 22 de septiembre de 2004, **2004 J.T.S. 160**. No obstante, la norma de revisión de las determinaciones administrativas fundamentada en la deferencia judicial a éstas, no nos obliga a soslayar o rendir nuestra función revisora cuando dicha decisión administrativa no está sustentada por evidencia sustancial en el récord o cuando son irrazonables o contrarias a derecho. *Autoridad de Energía Eléctrica v. Maxon Engineering Services, Inc.*, opinión del 9 de diciembre de 2004, **2004 J.T.S. 199**; *Pacheco Torres v. Estancias de Yauco*, opinión del 30 septiembre de 2003, **2003 J.T.S. 150**; *Asociación de Vecinos v. United Medical Corp.*, 150 D.P.R. 70 (2000).

Recientemente, el Tribunal Supremo retomó el tema del alcance de la revisión judicial de decisiones administrativas en el caso, *Otero Mercado v. Toyota de Puerto Rico*, opinión del 3 de febrero de 2005, **2005 J.T.S. 13**. En el referido caso, el Tribunal Supremo reiteró que las decisiones de los organismos administrativos merecen la mayor deferencia judicial por razón del conocimiento especializado y la experiencia en cuanto a los asuntos que les son encomendados. Al revisar una decisión administrativa, el criterio rector será la razonabilidad en la actuación de la agencia. Conforme al criterio de razonabilidad y deferencia, como ya se ha dicho, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, "*si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad*". *Otero Mercado v. Toyota de Puerto Rico, supra*; *Pacheco Torres v. Estancias de Yauco, supra*; *Domínguez Talavera v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387, 397 (1991).

Debemos, asimismo, tener presente que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada, mientras la parte que la impugne no produzca suficiente evidencia para derrotarla en un proceso adecuado. *Pérez Vélez v. VPH Motors Corp.*, 152 D.P.R. 475 (2000); *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987). Por ello, los tribunales debemos ser cautelosos al intervenir con las determinaciones de los organismos administrativos y ser deferentes con ellos, como correctamente lo exige la sec. 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175, y jurisprudencia comentada.

Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal, 3 L.P.R.A. sec. 2175, sin sujeción a norma o criterio alguno. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, supra*, a la pág. 1266.

## B. Teoría General de los Contratos

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. sec. 3371; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 D.P.R. 571, 581-582 (2000). Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto. Artículo 1213 del Código Civil, 31 L.P.R.A. sec. 3391; *Díaz Ayala et al. v. E.L.A.*, **2001 J.T.S. 49**, a la pág. 1066. Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Artículo 1230 del Código Civil, 31 L.P.R.A. sec. 3451.

Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. *Amador Parrilla v. Concilio Iglesia Universal, supra*. De conformidad con el principio rector de *pacta sunt servanda*, las partes contratantes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público. Artículo 1210 del Código Civil, 31 L.P.R.A. sec. 3375. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las

leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Véase además: S. L.G. Irizarry v. S.L.G. García, **2001 J.T.S. 164**; Trinidad v. Chade, **2001 J.T.S. 10**; Luán Invest. Corp. v. Rexach Const. Co., 152 DPR 652 (2000); Amador Parrilla v. Concilio Iglesia Universal, supra. Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994.

Estas normas reconocen un doble postulado en la teoría general de la contratación; de un lado, la libertad de contratación; de otro, la total autonomía de la voluntad de los contratantes que han escogido obligarse mutuamente para determinar el contenido de dicha relación jurídica, limitada únicamente dicha autonomía por los parámetros que impongan la ley, la moral y el orden público. Una vez los contratantes eligen contratar entre sí, pueden pautar el contenido y alcance normativo de su relación jurídica, sin otra intromisión del Estado que la impuesta por los límites descritos. Tan importante es la voluntad dual libremente expresada por medio del consentimiento libre e informado de ambos contratantes, que el Código Civil postula como axioma básico de la teoría general de la contratación que "la validez y [el] cumplimiento [del contrato así perfeccionado] no puede dejarse al arbitrio de una de las partes." Artículo 1208 Código Civil, 31 L.P.R.A. sec. 3373.

## C. La Interpretación de los Contratos

Cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; Irizarry López v. García Cámara, supra; Trinidad García v Chade, supra; Marcial Burgos v. Tomé, 144 D.P.R. 522, 536 (1997). Aún así, hay ocasiones en que no es posible determinar la voluntad de los contratantes con la mera lectura literal. Al respecto, el Artículo 1234 del Código Civil, 31 L.P.R.A. sec. 3472, establece que se podrá juzgar la voluntad de los contratantes por los actos anteriores, coetáneos y posteriores al perfeccionamiento del contrato.

Por su parte, el Artículo 1235 del Código Civil, 31 L.P.R.A. sec. 3473, establece que "[c]ualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". Además, el Artículo 1236 del Código Civil, 31 L.P.R.A. sec. 3474, dispone que "[s]i alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto". Por tanto, si bien hay que considerar la intención de las partes para interpretar los contratos, la interpretación tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. Irizarry López v. García Cámara, supra. Tampoco puede llevar a resultados contrarios al texto del contrato.

En nuestra jurisdicción, el negocio de seguros es uno investido de substancial interés público y, por tanto, ha sido reglamentado por el Estado. Código de Seguros, Ley Núm. 77 de 19 de junio de 1957, 26 L.P.R.A. sec. 101, et seq., San Miguel Lorenzana v. E.L.A., 134 D.P.R. 405 (1993); Comisionado de Seguros v. Anglo Porto Rican Insurance Agencies, 97 D.P.R. 637 (1967). El mismo Código de Seguros dispone que todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. Artículo 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125. Meléndez Piñero v. Levitt & Sons, 129 D.P.R. 521 (1991).

Como el propósito del contrato de seguros es la indemnización y la protección en caso de producirse un suceso incierto previsto en el mismo, ▇ el Tribunal Supremo de Puerto Rico ha señalado que las cláusulas de exclusión deberán ser interpretadas restrictivamente y que las dudas serán resueltas de modo que se cumpla con el propósito de la póliza. Véase, PFZ Props., Inc. v. General Acc. Ins. Co., 136 D.P.R. 881 (1994); Casanova v. P.R. American Ins. Co. 106 D.P.R. 689 (1978); Ferrer v. Lebrón García, 103 D.P.R. 600 (1975).

## D. Los Contratos de Adhesión

Al interpretar los contratos, los tribunales debemos tener presente las normas particulares aplicables a los llamados contratos de adhesión. Este es aquél en el que una de las partes dicta las condiciones del contrato. *López Castro v. Atlantic Southern Insurance Co.*, 158 D.P.R. ___ (2003), **2003 J.T.S. 14**.

En los casos de contratos de adhesión impera la norma de que cuando el contrato contiene cláusulas obscuras o ambiguas, deberá activarse la norma de interpretación del Artículo 1240 del Código Civil, 31 L.P.R. A. sec. 3478, por virtud de la cual toda duda debe resolverse contra la parte que redactó el contrato. Ahora bien, en ausencia de ambigüedad u oscuridad, el contrato debe ser interpretado según sus términos. *Arthur Young v. Vega*, 134 D.P.R. 157 (1994), pág. 166; *González v. Coop. de Seguros de Vida*, 117 D.P.R. 659 (1986); *Casanova v. Puerto Rican American Insurance Co.*, 106 D.P.R. 689, 697 (1978).

## E. Ley Complementaria de Garantías de Vehículos de Motor

El inciso (h) del Art. 2 de la Ley Complementaria de Garantías de Vehículos de Motor, Ley Núm. 330 de 2 de septiembre de 2000, 10 L.P.R.A. sec. 2067, dispone que un contrato de servicio es un acuerdo opcional de un producto de servicio. Este contrato provee protección adicional más allá de lo que la garantía ofrece en el vehículo. Los contratos de servicios y las garantías son parecidas. La diferencia es que la garantía viene con el producto y está incluida en el precio de compra, mientras que el contrato de servicio es un acuerdo separado del contrato de venta o la venta misma del producto, porque el consumidor lo adquiere luego de la compra del vehículo o porque conlleva un costo adicional al consumidor.

## III

En su escrito de revisión, el recurrente imputó al D.A.C.O. la comisión de tres errores. Primero, alegó que incidió la agencia al determinar que éste debía asegurarse que el motor de la recurrida sea reparado satisfactoriamente. Señaló que, conforme al contrato de servicios sucritos por las partes, Universal se comprometió exclusivamente al pago o reembolso de un monto razonable del costo de reparación de aquellos desperfectos mecánicos que no fueron expresamente excluidos en dicho acuerdo. Arguyó, que la determinación del D.A.C.O. tiene el efecto práctico de imponer a Universal una obligación adicional a la pactada, que le exige garantizar el servicio prestado por el taller de mecánica que reparó el vehículo.

Como segundo señalamiento de error, el recurrente planteó que erró la agencia al apreciar la prueba. Señaló, que se equivocó el D.A.C.O. al no identificar los desperfectos que están relacionados con el mal funcionamiento del vehículo, los cuales según ordenó, deben repararse satisfactoriamente. Indicó particularmente que los problemas que presenta actualmente el vehículo están relacionados con el sistema de emisiones y los mismos no están cubiertos por la póliza. ▇ Sostiene, que el D.A.C.O. excedió su discreción al ordenarle reparar defectos que están excluidos de la cubierta de la póliza.

En lo pertinente expresó el D.A.C.O. en su dictamen lo siguiente:

*"Bajo el Contrato de Servicios de la coquerellada Universal Insurance Company la reparación del motor, instalación del mismo, y servicios posteriores para reparar los problemas mecánicos del motor no fueron satisfactorios conforme la prueba presentada y el propio informe de inspección de la coquerellada Universal Insurance Company."*

La obligación de la coquerellada Universal Insurance Company no puede limitarse sólo a autorizar unos servicios y pagarlos, sino que debe asegurarse que los mismos sean satisfactorios a la parte Querellante. En la medida que dichos servicios no han sido satisfactorios, no puede alegar como defensa que el pago de los mismos cubrió el monto máximo de la póliza.

La coquerellada Universal Insurance Company debe asegurarse que el servicio que pagó a la coquerellada Pep Boys y otros contratistas para reparar el motor del vehículo de la Querellante sea satisfactorio. ■

Tiene razón el D.A.C.O. en su interpretación de las obligaciones de la recurrente. Está ampliamente apoyada en la prueba su determinación de que los desperfectos mecánicos que confronta el vehículo y que están cubiertos por la póliza, no han sido corregidos satisfactoriamente. Coincidimos con la agencia en cuanto a que la responsabilidad de Universal no se limitaba exclusivamente a pagar la reparación del vehículo, sino además que su obligación subsiste mientras el mismo no sea reparado de manera apropiada. Ello con mayor razón cuando fue la propia recurrente la que refirió la recurrida a Pep Boys para que efectuara el diagnóstico mecánico y la reparación del automóvil. Está implícito en cualquier contrato de servicio, no sólo la obligación de prestar dicho servicio, sino además de prestarlo bien y efectivamente. *Constructora Bauzá, Inc. v. García López,* 129 D.P.R. 579, 594 (1991). No es necesario pactar esa obligación, puesto que ella es inherente al deber de dar fiel y efectivo cumplimiento a las obligaciones contractuales.

Si bien, técnicamente, Universal no puede necesariamente *"garantizar"* que el trabajo que habrá de prestar el taller será efectivo en la solución del problema, responde por esa y futuras reparaciones hasta que el desperfecto sea finalmente corregido. En ese sentido es propio afirmar que Universal es responsable por la calidad del servicio prestado y, por tanto, tiene la obligación de procurar que el vehículo sea reparado correcta y satisfactoriamente. Ello, por supuesto, no releva a los contratistas de responsabilidad por el trabajo realizado. Tanto la recurrida como Universal, por virtud del contrato existente entre ellos, puede reclamar las garantías correspondientes a estos contratistas. No debe olvidarse, que conforme al contrato le corresponde a Universal pagar por dichos servicios. ■ En fin, la recurrente no puede pretender liberarse del resultado del servicio prestado con el pago del mismo, cuando este no fue efectivo. Su responsabilidad continua mientras el servicio prestado no sea satisfactorio.

De otra parte, no obstante la deferencia que nos merecen las determinaciones administrativas, según antes expresado, en el presente caso encontramos que erró el D.A.C.O. al interpretar cierto extremo del contrato suscrito por las partes. No es procedente imponerle a Universal la obligación de reparar o pagar por la reparación de todos los desperfectos mecánicos del vehículo, incluyendo aquéllos que no están cubiertos por la póliza. De una mera lectura del contrato surge que el sistema de emisiones se excluyó de las partes cubiertas por la póliza. [9] Del informe técnico preparado por el mecánico de Universal se desprende que uno de los defectos que presenta la unidad es que el sistema de emisiones de gases no funciona bien. La reparación de tal desperfecto no le es imputable a Universal, por lo que es de la exclusiva responsabilidad de la recurrida. En lo que respecta a este particular, es preciso modificar la Resolución de D.A.C.O.

En su tercer señalamiento de error, señaló Universal que incidió el D.A.C.O. al ordenarle al recurrente hacer las gestiones para asegurarse que el vehículo de la recurrida sea reparado, aun cuando, según se alegó, la póliza estaba vencida. Se equivoca la recurrente sobre dicho planteamiento.

Conforme surge del expediente ante nos, el contrato de servicios en el caso de autos fue suscrito por las partes el mismo día de las compra del vehículo, o sea, el 23 de agosto de 2002, y tenía una vigencia de tres años. La póliza expiró el 8 de agosto de 2005. Las reclamaciones de la recurrida bajo el contrato de servicios incluyendo la aquí objetada, se formalizaron estando vigente la póliza. A pesar de los múltiples intentos de la parte recurrente para corregir los desperfectos mecánicos confrontados por el vehículo, los mismos no han sido reparados correctamente. Por tanto, habiéndose interpuesto la reclamación por la recurrente dentro de la vigencia de la póliza, según se señaló anteriormente, el recurrente viene obligado a pagar la reparación de dichos desperfectos mientras ellos no sean corregidos satisfactoriamente, aun cuando en ese intervalo de tiempo haya expirado la vigencia de la referida póliza. No debe olvidarse lo ya señalado, de que la obligación en los contratos de servicio no es sólo prestar el mismo, sino prestarlo bien.

Por último, discrepamos del análisis de la recurrente referente a la Cláusula 5(a), sec. V del Contrato, sobre los límites de responsabilidad. Nótese que la condición de que no exceda del valor actual de vehículo se refiere a casos en los que se trata: (a) del costo de una "*sola visita*", y (b) sobre gastos de reparación agregados, cuando se trate de un vehículo nuevo. Adviértase que cuando se refiere a vehículos usados, que es el aplicable a este caso, Universal no responde si el total de los beneficios pagados excede la cantidad de $8,000.00, por tratarse de una cubierta de 36 meses, conforme al inciso (b) de la referida cláusula. Este límite no está sujeto al criterio del valor del vehículo. Puesto que en ese caso las reparaciones aún no han excedido dicha suma, esta cláusula tampoco impide la reclamación.

## IV

Por los fundamentos anteriormente expresados, se modifica la Resolución recurrida a los efectos de ordenar a Universal únicamente la reparación de las averías mecánicas que están cubiertos por la póliza y que se reclamaron durante la vigencia de la misma o que sean consecuencia directa de los desperfectos cubiertos por la póliza y que no hayan sido reparados satisfactoriamente. De ellos se excluye la reparación del sistema de emisiones de gas, por no estar cubierto por la póliza. Así modificada, se confirma.

Así lo acordó y lo manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 68

1. Según se alegó en la querella, el mismo día de la compra, el vehículo comenzó a mostrar los siguientes defectos: luz de "*check engine*" encendida todo el tiempo, se apaga en bajas, liqueo de aceite de motor y monolítico roto.

2. Surge del expediente que el automóvil fue reparado por Pep Boys en unas diez (10) ocasiones.

3. Contra dichas decisiones desestimatorias no se recurrió, ni se señala como error en el presente caso.

4. *Id.*

5. Artículo 11.250 del Código de Seguros, *supra.*

6. *Id.* en la página 34.

7. *Id.* en la página 59.

8. En el presente caso, no está planteado si incidió o no el D.A.C.O. al desestimar la querella contra los proveedores del servicio de mecánica. Tampoco se recurrió de ello en otros casos, como ya se indicó. Véase nota al calce núm. 3.

9. Cláusula 6 (a), Sec. V del Contrato.