OPINION AND ORDER
 

 GIERBOLINI, Senior District Judge.
 

 Pending before this court is defendants “Motion to Dismiss” for want of the jurisdictional amount. (Docket entry # 11). Plaintiff duly opposes. (Docket entry # 15).
 

 After careful consideration of the parties arguments, the record and the applicable caselaw, we find that plaintiff has failed to meet the required burden of supporting her allegation of jurisdictional amount, which has been challenged by defendants. Hence, we GRANT defendants Motion to Dismiss.
 

 BACKGROUND
 

 On February 6, 1995 plaintiff Monserrate López Nieves filed the present tort action seeking redress for the moral damages she suffered as a consequence of the death of her ex-sister in law, Norma I. Hernández Feliciano. On January 26, 1996 Ms. Hernández was driving an Oldsmobile Cutlass Supreme on Road Number 2 when she was involved in a motor vehicle accident allegedly caused by the negligent driving of co-defendant David González Ferrer. Mr. Gonzalez Ferrer was driving a Ford truck property of co-defendant Edwin Marrero Vergel. The front part of the truck collided with the rear-end of the Cutlass Supreme driven by Ms. Hernández dragging it 657 feet. When both vehicles came to a stop the truck’s front right wheel ended up on the roof of Ms. Hernández’ vehicle. Ms. Hernández died that same day as a result of the severe and extensive injuries sustained in the accident. (Docket entry # 1).
 

 Jurisdiction in this case is invoked pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists when the claims in the complaint are between citizens of different states and when the matter in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). The allegations in the complaint show that there is complete diversity among the parties. Ms. López Nieves is domiciled in Bridgeport, Connecticut and defendants are all domiciled in Puerto Rico. As to the jurisdictional amount, plaintiff claims she suffered moral damages and mental anguish reasonably estimated in the amount of $90,000.00. (Docket entry # 1).
 

 On July 31, 1996 defendants filed the instant motion to dismiss arguing that her alleged family relationship with the deceased was not strong enough to sustain the amount of damages claimed. In addition, defendant asserts that under Puerto Rico caselaw plaintiffs claim must be reduced proportionally to the degree of comparative negligence incurred by the decedent. In short, defendants maintain that it is clear to a legal certainty that plaintiffs claim fails to comply with the jurisdictional amount, thus warranting its dismissal. Ms. López Nieves opposes stating that the nature and extent of her moral damages and mental anguish, as a result of the tragic death of her ex-sister in law is a material fact in controversy precluding us from granting this motion. Regarding the reduction of the award of damages by the deceased’s comparative negligence, plaintiff sustains that this was a rear-end collision where there was no fault on the part of the plaintiff.
 

 Defendants filed excerpts of plaintiffs deposition and documents in support to their
 
 *126
 
 motion to dismiss. Likewise, plaintiff replied adding additional relevant extracts of her deposition and other documents to sustain her arguments in opposition. In other words, both parties have had ample opportunity to file supporting evidence to aid the court in ruling on this matter.
 

 JURISDICTIONAL AMOUNT
 

 It is well established that the sum claimed by a plaintiff in the complaint controls if the claim is apparently made in good faith.
 
 Saint Paul Mercury Indemnity Co. v. Red Cab Co.,
 
 303 U.S. 283, 288-89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938);
 
 Duchesne v. American Airlines, Inc.,
 
 758 F.2d 27, 28 (1st Cir. 1985).
 
 See also, Serrano v. Nicholson Nursery, Inc.,
 
 844 F.Supp. 73, 75 (D.P.R.1994). However, once plaintiffs statement of jurisdictional amount is challenged, the party invoking the court’s jurisdiction bears the burden of alleging with sufficient particularity the facts creating jurisdiction and supporting the allegation if challenged.
 
 Saint Paul,
 
 at 287, n. 10, 58 S.Ct. at 589-90, n. 10;
 
 Duchesne,
 
 at 28 (citing
 
 Gibbs v. Buck,
 
 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939);
 
 Serrano,
 
 at 76. Therefore, a claim can only be dismissed for failure to meet the jurisdictional amount when it appears to a “legal certainty” that, after considering the applicable state law, the claim is really for less than the jurisdictional amount.
 
 Id.
 

 MORAL DAMAGES
 

 Under Puerto Rico easelaw, those related to a deceased victim by blood ties or by love and affection also suffer moral damages. Accordingly, Puerto Rico has recognized that these individuals may file an independent cause of action against the person causing the unlawful death of a loved one.
 
 Hernández v. Fournier,
 
 80 P.R.R. 94, 98 (1957);
 
 Figueroa v. Boston Ins. Co.,
 
 101 D.P.R. 598 (1973);
 
 Heirs of Pacheco v. Eastern Medical Ass., Inc.,
 
 — D.P.R. - (1994), 94 J.T.S. 49, p. 11772.
 
 See also, Rojas-Hernández v. PREPA
 
 925 F.2d 492, 493, n. 1 (1st Cir.1991). However, cognizant of the possibility that an endless number of persons could bring such actions as result of a single tortious act, the Supreme Court of Puerto Rico has held that moral damages can only be compensated if plaintiffs show that their emotional condition was substantially affected. That is, it is essential to prove deep moral suffering and anguish because a passing affliction would not give rise to an action.
 
 Id.,
 
 at 104.
 
 See also, Reyes v. Eastern Airlines, Inc.,
 
 528 F.Supp. 765, 767 (D.P.R.1981);
 
 Serrano,
 
 at 75.
 

 Therefore, a judgment in this area must necessarily rest upon an evaluation of: (1) the severity of the pain suffered; (2) its duration; and (3) its mental consequences.
 
 Serrano,
 
 at 76. In essence, moral damages will be compensated only if it is shown how the health, welfare, and happiness of the plaintiff was really affected by the death.
 
 Miranda v. E.L.A,
 
 — D.P.R.-(1994), 94 J.T.S. 152, p. 527, n. 9 (citing
 
 Fournier,
 
 supra and
 
 Ramos v. Commonwealth,
 
 90 P.R.R. 806, 809 (1964));
 
 Moa v. Commonwealth,
 
 100 P.R.R. 572, 586 (1972);
 
 Ruiz-Rodríguez v. Colberg-Comas,
 
 882 F.2d 15, 18 (1st Cir.1989);
 
 Cruz v. Molina,
 
 788 F.Supp. 122, 129 (D.P.R.1992).
 
 See also, Ferrer v. Lebrón,
 
 103 D.P.R. 600, 602 (1975).
 

 Traditionally, the courts have awarded moral damages to the parents, spouses, commonlaw spouses, ex-spouses, sons and daughters, and siblings of a deceased.
 
 See, Sanabria v. E.L.A,
 
 — D.P.R.-(1993), 93 J.T.S. 24, p. 10411 (awarding moral damages to parents and brother of the victim);
 
 Miranda v. E.L.A,
 
 at 519 (awarding moral damages to the widow and sons);
 
 Heirs of Pacheco,
 
 at 11772 (ex-wife);
 
 Correa v. P.R. Water Resources Authority,
 
 83 P.R.R. 139 (1961) (holding that a concubine may file a tort action for the wrongful death of her companion provided she establishes a real prejudice derived from that death);
 
 Cáez v. U.S. Casualty Co.,
 
 80 P.R.R. 729 (1958) (each child may claim compensation for the damages personally suffered by them as the result of the wrongful death of their father). Because of the natural affective relationship that presumably exists between these type of claimants and the deceased, it is evident that the loss of a next of kin will cause profound moral damages.
 

 Yet, in cases where the plaintiffs fell in one of the categories herein mentioned, the courts have still closely scrutinized the
 
 *127
 
 stability of the family nucleus and taken into consideration how strong the family ties were between plaintiffs and the victim.
 
 See, Sanabria,
 
 at 10411 (reducing the amount of moral damages awarded to the parents and brother of the deceased);
 
 Ruiz-Rodriguez,
 
 at 17 (affirming jury verdict denying moral damages to son who had rarely seen father in recent years). Therefore, the farther away the blood tie or affective relationship is between plaintiff and the deceased, the stronger the showing of suffering must be.
 

 FEDERAL COURTS
 

 In the context of diversity of citizenship jurisdiction, the concern that an endless number of persons, related to the deceased or direct victims of a tortious act, could bring tort actions as result of the moral damages suffered is even more troubling. With almost two million Puerto Ricans residing in the continental United States it is foreseeable how many persons will immediately file tort actions in this forum whenever a relative or friend domiciled in this island dies or suffers a tort.
 
 [1]
 
 Because such relatives or friends live in other states they have the eovetable choice of filing in federal court, thus enjoying the right to trial by jury.
 
 [2]
 

 Therefore, under these circumstances were the federal plaintiff lives far away from the direct victim of the tortious act, we must closely scrutinize the affective ties between them in order to determine if the jurisdictional amount has been properly pleaded. In engaging in the evaluation of how close that relationship was, the court must weigh the following factors, among others that may result likely relevant:
 

 1. how long has the federal plaintiff lived in the continental United States or abroad;
 

 2. how many trips has the federal plaintiff made to Puerto Rico during approximately the last ten years;
 

 3. how frequently have the federal plaintiff and the victim visited each other;
 

 4. the degree of dependency between the federal plaintiff and the victim, either economic or otherwise.
 

 ANALYSIS
 

 Ms. López Nieves alleges in the complaint that she:
 

 had known Ms. Hernández for over ten (10) years, having developed a family relationship with her through her brother and when visiting her nieces. She suffered] extremely while observing
 
 [3]
 
 her nieces suffer, and visualizing the great hardship and affliction her nieces [we]re experiencing, knowing they ha[d] been deprived of the love and tutelary of their mother. As a result of the tragic death of her ex-sister in law, plaintiff has suffered moral damages and mental anguish which are reasonably estimated in the amount of $90,000.00. (Docket entry # 1).
 

 As to the relationship between plaintiff and the deceased, the record shows that Ms. López Nieves knew Ms. Hernández since she was five years old, they lived close by and at the age of thirteen plaintiff was sent to Chicago to live with her brother Ramón and the deceased. Ms. López Nieves lived at her brother’s home approximately four (4) years. Plaintiff stated in her deposition that while she lived with Rámon her relationship with Ms. Hernández was good and that they became “inseparable”
 
 [4]
 
 .
 
 See,
 
 Exhibit A of the Opposition, pp. 14, 18-19, 22, 26.
 

 However, on May 1990, plaintiff moved to Bridgeport, Connecticut. Although Ramón and Ms. Hernández remained in Chicago they never visited each other.
 
 Id.,
 
 pp. 28-29. Ramón and the deceased moved back to Puerto Rico in 1993. Plaintiff asserts that the only means of communication was
 
 *128
 
 through the mail and telephone calls and that she would send the letters to their house addressed “to my dear brother and sister-in-law”.
 
 Id.,
 
 p. 45. Nonetheless, on August 12, 1994 Ms. Hernández and plaintiffs brother were divorced under the ground of separation, which requires the spouses to have been previously separated for an uninterrupted period of more than two years.
 
 See,
 
 Exhibit A of the Motion to Dismiss.
 
 [5]
 
 After the accident, plaintiff was going to try to come to Puerto Rico but did not found money to come.
 
 See,
 
 Exhibit A of the Opposition, p. 32. In sum, after she separated from her family in 1990 she never saw again her brother and nieces until approximately nine months after the accident.
 
 Id.,
 
 pp. 50-53.
 

 Although there was some sort of “family” relationship between plaintiff and the deceased, the record is meager as to the strength of their affective ties. After 1990 plaintiff never saw the deceased again, there is no indication on the record as to how frequent plaintiff would write and/or speak on the phone with the deceased nor whether Ms. Hernández would write back to her. Moreover, plaintiff learned of her ex-sister in law’s separation and divorce through her mother and not through Ms. Hernández.
 
 Id.,
 
 p. 47. Finally, the stability of the family nucleus had indeed been affected by the separation, the divorce and subsequent events.
 

 On the other hand, when asked to explain what her moral damages consisted of, plaintiffs first response was:
 

 What else, the girls, that is what worries me, that the little girls are now without their mother. (Our translation).
 
 See, Id.,
 
 p. 50.
 

 It is evident from the complaint and deposition testimony that plaintiffs primary source of mental anguish stems from “observing” her nieces suffer.
 
 Id.;
 
 Docket entry # 1. This is insufficient to sustain her claim for moral damages. The anguish suffered as a consequence of other plaintiffs’ moral damages is not what is sought to be compensated under this cause of action. Under this tort action, the source of responsibility is the particular damage the death directly and personally caused the plaintiff.
 
 Fournier,
 
 at 98 & 103^.
 

 As to how Ms. Hernández’ death personally affected plaintiff, Ms. López Nieves merely reiterated in her deposition the shallow assertions made in the complaint to the effect that the deceased was close to the family and that they had lived together. Exhibit A of the Opposition, p. 50. Besides said testimony, there is no other indication on the record of how plaintiffs health, welfare, happiness, in sum, her emotional condition was substantially affected by the death of her ex-sister in law. On the contrary, the evidence announced by plaintiff is exclusively directed at establishing the facts of the accident and defendant’s negligence. Even the extension of time sought to oppose the motion to dismiss was to obtain the deposition transcript of defendants’ expert in forensic pathology and toxicology. (Docket entry # 13).
 

 In conclusion, the record is devoid of any declarations regarding the severity of the pain and emotional consequences the death of Ms. Hernández directly caused upon plaintiff. Therefore, even without considering the possible discounting effect
 
 [6]
 
 of the deceased’s alleged comparative negligence
 
 [7]
 
 , we find that plaintiff has failed to meet the burden required to maintain her claim in the federal forum.
 
 [8]
 
 That is, to allege with sufficient
 
 *129
 
 particularity that to a legal certainty her claim is in excess of $50,000.00.
 

 WHEREFORE, for the reasons stated above, defendants’ Motion to Dismiss is GRANTED and this case is hereby DISMISSED. Judgment will be entered accordingly.
 

 SO ORDERED.
 

 [1]
 

 . Although we have made this statement we have not taken it into consideration for the resolution of the present controversy.
 

 [2]
 

 . In addition, this situation could also create the inevitable anomaly of a distant relative obtaining a greater judgment in the federal forum than that the actual victims of the tortious act could secure if their only available forum is the local court.
 

 [3]
 

 . Since 1990 Ms. López Nieves had not seen her nieces again until approximately nine months after the accident when she came to Puerto Rico for her deposition.
 
 Id.,
 
 pp. 50-53.
 

 [4]
 

 . Eramos uña y came”.
 
 See,
 
 p. 26, line 4 of her deposition.
 

 [5]
 

 . In addition to the separation and eventual divorce, plaintiff’s brother spent several days in jail as a consequence of a criminal complaint for assault and battery filed by the deceased.
 
 Id.,
 
 Exhibit C.
 

 [6]
 

 .
 
 See, Miranda v. E.L.A.,
 
 at 526-27 in regards to the application of the victim's comparative negligence percentage to other claimant’s award of damages.
 

 [7]
 

 . Although the accident in this case was a rear-end collision, there is evidence on the record suggesting the possibility of Ms. Hernández’ comparative negligence, namely, that she invaded the lane on which defendant’s truck was travelling and that at the time of the accident she was not physically fit to drive a motor vehicle.
 
 See,
 
 Exhibit B of the Opposition, p. 6.; Uncontested facts # 3 of the Initial Scheduling Conference Report, (Docket entry # 7).
 
 See also, Vélez
 
 v. Amaro, -D.P.R. -(1995), 95 J.T.S. 38, p. 757 & 759-60.
 

 [8]
 

 . Even analyzing this case under the standards of a motion for summary judgment, we would arrive at the same conclusion.
 
 McCarthy v.
 
 
 *129
 

 Northwest Airlines, Inc.,
 
 56 F.3d 313, 315 (1st Cir.1995) (in viewing the entire record in light most hospitable to the nonmovant party and indulging all reasonable inferences, trial court must not pay heed to conclusory allegations);
 
 Milton v. Van Dorn Co.,
 
 961 F.2d 965, 969 (1st Cir.1992) (nonmovant cannot rest on mere allegations, it must proffer sufficient competent evidence upon which a rational trier of fact could find in its favor).