# 2003 DTA 113

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

BLAS JAVIER HERNANDEZ COLON
Apelado

v.

COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO
Apelante

Núm. KLAN-02-00642

San Juan, Puerto Rico, a 3 de julio de 2003

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos la Cooperativa de Seguros Múltiples de Puerto Rico, en adelante, Cooperativa, solicitando la revisión de una Sentencia emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Orocovis. Mediante dicho dictamen, el tribunal *a quo* declaró Con Lugar la demanda interpuesta.

Por los fundamentos que se exponen a continuación, se revoca la Sentencia apelada.

### I

Conforme surge del recurso ante nuestra consideración, Blas Javier Hernández Colón, en adelante, el apelado, interpuso demanda sobre incumplimiento de contrato y daños y perjuicios contra la Cooperativa.

Génesis de dicha acción lo fue un contrato de seguro suscrito entre las partes. En la demanda incoada se alegó:

*"1. Que la parte demandante [apelado] concertó con la parte demandada [apelante] un contrato de seguro, el cual se celebró en Orocovis, Puerto Rico el 6 de marzo de 1996, mediante el cual la parte demandada [apelante] se comprometió a cubrir los daños que se le pudieran ocasionar a una residencia propiedad de la parte demandante [apelada], sita en el Barrio Saltos del término municipal de Orocovis, Puerto Rico, conforme al contrato suscrito por ambas partes.*

*2. Que la parte demandante [apelado] había acordado con la parte demandante [apelado] que el límite de responsabilidad del contrato de seguro otorgado ascendía a la cantidad de $60,000.00 y que cualquier daño provocado por un huracán, un incendio, un terremoto o vandalismo o daños maliciosos a la propiedad serían cubiertos por el contrato de seguro en cuestión.*

*3. Que el día 21 de septiembre de 1998 y estando en vigor la referida póliza de seguro, por Puerto Rico pasó el Huracán Georges, provocando que sus vientos destruyeran una pared de cristal de la aludida residencia y ocasionando daños por concepto de perdidas [sic] a la parte demandante [apelado] ascendentes a la suma de $6,500.00.*

*4. Que la parte demandante [apelado] realizó la correspondiente reclamación a la parte demandada [apelante] a fin de que en virtud de la póliza de seguro existente y vigente, dicha parte procediera a pagar las perdidas [sic] sufridas por la parte demandante [apelado] y ocasionadas por el paso del Huracán Georges por Puerto Rico.*

*5. Que la parte demandada [apelante] se ha negado a cumplir con su parte del contrato al no pagar a la parte demandante [apelado] la suma de $6,500.00 y ocasionándole daños ascendentes a la suma de $15,000.00.*

*6. Que el incumplimiento de contrato llevado a cabo por la parte demandada [apelante] ha ocasionado los daños aducidos, a la parte demandante [apelado], los cuales deben ser resarcidos con una suma no menor de $15,000.00 para la parte demandante [apelado]."*

Véase, Exhibit I del Apéndice.

El 4 de octubre de 1999, la Cooperativa presentó *"Moción de Sentencia Sumaria"*. Argumentó en dicho escrito que la póliza adquirida por el apelado no contemplaba cubierta para la propiedad personal, toda vez que se había solicitado únicamente cubierta para daños en la vivienda. Al amparo de dicha cubierta, la Cooperativa le había pagado al apelado la cantidad establecida, una vez aplicado el deducible.

El 15 de noviembre de 1999, el apelado presentó debida oposición. En el escrito, el apelado indicó que el contrato de seguros suscrito entre las partes disponía para el pago de daños causados por tormenta de viento, huracán o granizo. Asimismo, arguyó que el contrato establecía: *"[e]ste peligro no incluye pérdidas: a. al interior del edificio ni a la propiedad contenida en un edificio ocasionados por lluvias, nieve, cellisca, arena o polvo a menos que la fuerza directa del viento o del granizo dañe el edificio ocasionando una abertura en el techo o en la pared y la lluvia, nieve, cellisca, arena o polvo entre por esta apertura."* La Cooperativa presentó dúplica.

Evaluados los escritos mencionados, el Tribunal de Primera Instancia, mediante Resolución emitida el 16 de febrero de 2000, denegó la solicitud de sentencia sumaria presentada por la Cooperativa.

En su consecuencia, la Cooperativa presentó alegación responsiva. La vista en su fondo se celebró el 27 de febrero de 2001. Aquilatada la prueba testifical y pericial, el Tribunal de Primera Instancia declaró Con Lugar la

demanda incoada. A tales efectos, concedió al apelado $11,400 por los bienes muebles dañados en el interior de la residencia; $2,000 por las angustias mentales sufridas por el apelado; $2,000 por la privación de uso y disfrute de los bienes; y $3,000 por concepto de honorarios de abogados.

Inconforme con el dictamen emitido, la Cooperativa acude a este Tribunal. Contando con el beneficio de la exposición narrativa de la prueba y del alegato del apelado, procedemos a resolver.

## II

En su escrito, la Cooperativa plantea que incidió el Tribunal de Primera Instancia al interpretar que existía cubierta para la propiedad personal; al no dar credibilidad al perito presentado por la Cooperativa sin que mediara prueba pericial en contrario; al conceder al apelado daños y angustias mentales y por la privación del uso y disfrute de los bienes, toda vez que la Cooperativa no estaba obligada a compensar al apelado por los daños a la propiedad personal; en su apreciación del testimonio de la testigo Lisa López Smith; y al concluir que la Cooperativa había sido temeraria.

## III

Un contrato de seguros es un contrato mediante el cual una persona se obliga a indemnizar a otra o a proveerle un beneficio específico o determinable al producirse un suceso incierto, previsto en el mismo. 26 L.P.R. A. sec. 102. Es un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento en específico. *Cooperativa v. Oquendo Camacho*, ___ D.P.R. ___ (2003), **2003 J.T.S. 31**.

*"Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima. El contrato de seguros es, pues, un contrato voluntario mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de ésta de responder por los daños económicos que sufra el asegurado en caso de ocurrir el evento específico".* Id., a la pág. 605; Véase, *Aseg. Lloyd's London v. Cía. Des. Comercial*, 126 D.P.R. 251, 266-267 (1990).

Toda vez que en nuestra jurisdicción el negocio de seguros es uno investido de sustancial interés público, éste ha sido reglamentado por el Estado. Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *"Código de Seguros de Puerto Rico"*, 26 L.P.R.A. sec. 101, *et seq.; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425 (1997); *PFZ Props., Inc. v. Gen. Acc Ins. Co.*, 136 D.P.R. 881 (1994); *San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. 405 (1993); *Maryland Casualty Co. v. San Juan Racing Assoc., Inc.*, 83 D.P.R. 559, 563 (1961).

Los contratos de seguros son preparados por la aseguradora, sin la participación del asegurado, por lo que si hubiesen cláusulas oscuras, deben interpretarse a favor del asegurado. Art. 1240 del Código Civil, 31 L.P.R.A. sec. 3478. Dispone dicho precepto:

*"La interpretación de las cláusulas obscuras de un contrato no deberá favorecer a la parte que hubiese ocasionado la obscuridad."*

Nuestro ordenamiento considera los contratos de seguro como de adhesión. *Cooperativa v. Oquendo Camacho, supra; Pérez Escolar v. Collado*, 90 D.P.R. 806, 811 (1964). Sobre el particular señala Puig Brutau:

*"[es] un contrato de adhesión, no en el sentido de que una de las partes tenga plena libertad para imponer sus condiciones a la otra, pero sí en el de que el asegurado no puede alterar con el juego normal de la previa negociación las condiciones que en esta clase de contratos median con carácter general."*

Puig Brutau, José, *Fundamentos de Derecho Civil*, Barcelona, Bosch, 1956, T. II, Vol. II, pág. 486.

Sobre lo anterior, ha indicado el Tribunal Supremo que los contratos de seguros, por ser unos de adhesión, en casos de oscuridad deben interpretarse en la forma menos favorable al asegurador. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Rivera Robles v. Insurance Co. of P.R.*, 103 D.P.R. 91, 93 (1974).

El Tribunal Supremo ha expresado que *"[el] Art. 11.180 del Código de Seguros de Puerto Rico, interesa un contrato de seguro completo en sí mismo, que contenga todo lo acordado entre las partes y que sea por escrito".*

En *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991), el Tribunal Supremo señaló:

*"Desde Barrera v. Tribunal, 87 D.P.R. 227 (1968), hemos sostenido que "[l]a regla general antes mencionada preceptiva de que la obscuridad en la redacción de los contratos no deberá favorecer a la parte que la hubiese ocasionado, opera... más rigurosamente en el caso de los contratos de seguro por ser... contratos de adhesión". Barreras v. Santana, ante, pág. 232. La razón es sencilla. Los términos de un contrato de seguro no son producto de la negociación mutua entre las partes. Usualmente, tales términos están prefijados en un impreso preparado por las compañías aseguradoras y el asegurado se adhiere a los mismos si desea, pero no tiene la facultad de variarlos. Por ello, en los casos donde existe ambigüedad, las estipulaciones de las pólizas de seguro se interpretan vigorosamente a favor del asegurado. Casanova v. P.R. American Insurance, 106 D.P.R. 689 (1978); Ferrer v. Lebrón García, 103 D.P.R. 600 (1975); Rivera v. Insurance Co. of P.R., 103 D.P.R. 91 (1974); Pérez Escolar v. Collado, 90 D.P.R. 806 (1964); Barreras v. Santana, ante. El asegurador, quien adopta o redacta las pólizas de seguro conforme a sus propios intereses sin la intervención directa del asegurado, tiene la obligación de hacer clara su intención; en otras palabras, viene obligado a establecer en la póliza, de manera diáfana, los riesgos por los que viene obligado a responder. Ratificamos en el día de hoy la referida norma. Ello no obstante, nos negamos a adoptar la posición minoritaria antes mencionada; somos del criterio que la misma es incorrecta.*

*Id.*, a las págs. 546 y 547.

## IV

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.

La Cooperativa, con relación a los dos primeros errores planteados, argumenta que su perito testificó que las pólizas de residencia proveían para cuatro (4) cubiertas disponibles: vivienda, otras estructuras, propiedad personal y pérdida de uso. Arguye que en el caso de autos el perito declaró que el apelado pagó una prima exclusivamente para la cubierta de estructura sin seleccionar cubierta para la propiedad personal, conforme surge de la Hoja de Declaraciones.

El Tribunal de Primera Instancia, en la Sentencia apelada, dispuso:

*"La parte demandante [Cooperativa] presentó en evidencia el testimonio de José A. Serrano Morales, quien declaró en cuanto a la responsabilidad de la parte demandante [Cooperativa]; no obstante, el Tribunal difiere de la interpretación de éste con relación a la cobertura entendiendo que los daños sí están cobijados por la póliza. La póliza en el caso de marrás [sic] contempla los daños en caso de la ocurrencia de un huracán, un incendio, un terremoto, vandalismos o daños maliciosos a la residencia propiedad del señor Hernández Colón [apelado], en el acápite denominado cubierta A, cuya cubierta abarca daños estructurales reclamados y a pesar de que la parte demandante [Cooperativa] no convino con la parte demandada [apelado] el incluir la cubierta C sobre daños a la propiedad personal, no obstante, en la página tres de la póliza denominada Formulario Básico, se indica al describir los riesgos asegurados y citamos:*

*Tormenta de viento, Huracán o Granizo*

*Este peligro no incluye pérdida al interior de un edificio ocasionadas por la lluvia, nieve, cellisca, arena o polvo; a menos que la pérdida esté excluida en las Exclusiones Generales, aseguramos contra la pérdida material directa a la propiedad ocasionada por uno de los Peligros a continuación:*

*Véase págs. 26-31 del Apéndice.".*

Comencemos reiterando la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Trinidad García v. Chade*, 152 D.P.R. ____, **2001 J.T.S. 10**. Sin embargo, este Tribunal está en igual condición que el juzgador de los hechos en la apreciación de la prueba pericial y puede adoptar su propio criterio al respecto. *Dye-Tex P.R., Inc. v. Royal Ins. Co. P.R.*, 150 D.P.R. ___ (2000); **2000 J.T.S. 67**; *Culebra Enterprises Corp. v. E.L.A.*, 143 D.P.R. 935 (1997); *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600 (1995); *Rodríguez Oyola v. Machado Díaz*, 136 D.P.R. 250 (1994).

En el caso de autos, el perito declaró sobre las cubiertas disponibles. Asimismo, testificó que lo primero que hay que analizar en una póliza de seguros es la Hoja de Declaraciones. ■ En este documento se recoge lo que el cliente desea asegurar, el período de vigencia de la póliza, donde está localizada la propiedad, la prima que pagó y las cubiertas que seleccionó.

Los términos de la póliza en controversia, a saber, la número DP-0756089, son meridianamente claros. El apelado seleccionó asegurar su vivienda durante el período de vigencia de 9/26/97 a 9/26/98, 12:01 A.M. La localización descrita, conforme se desprende del documento, es la propiedad del apelado, a saber, Bo. Saltos, Carr. 155 Km. 2 Hm. 0, Int. Orocovis, Puerto Rico. La prima total a pagar fue de $189.00.

A su vez, la póliza se proveyó al amparo de la Cubierta A. Al amparo de esta póliza, la Cooperativa le pagó al apelado los daños estructurales reclamados, una vez se aplicó el deducible dispuesto.

En el Formulario Básico se indica con respecto a la Cubierta A:

*"CUBIERTA A- Vivienda*

*Nosotros cubrimos:*

*1.- la vivienda en la Localización Descrita en las Declaraciones, usada principalmente para fines residenciales, incluyendo las estructuras anexas a la residencia;*

*2.- materiales y suministros ubicados en o adyacentes a la Localización Descrita, usados para construir, alterar o reparar la vivienda o demás estructuras en la Localización Descrita; y*

*3.- si no se cubren distintamente en esta póliza, los equipos de edificio y equipos exteriores usados para servir a la Localización Descrita y ubicados allí.*

*Esta cubierta no aplica a los terrenos, inclusive los terrenos en que está ubicada la vivienda."*

Véase página 38 del Apéndice.

A su vez, están disponibles las Cubiertas B, C, y D. Para el caso de autos, la Cubierta C dispone, en lo

pertinente:

"CUBIERTA C- Propiedad Personal

*Nosotros cubrimos la propiedad personal usual a la ocupación como vivienda y de su propiedad o uso, o de los miembros de su familia que vivan con usted en la Localización Descrita...".*

Véase página 38 del Apéndice.

Al momento de suscribir el contrato de seguros, el apelado, entre otros extremos, podía seleccionar o una de las Cubiertas, más de una o las cuatro mencionadas. No obstante, se desprende de manera meridiana de la póliza que el apelado seleccionó la Cubierta A. Bajo la Cubierta A, en caso de tormenta de viento, huracán, sólo cubre daños a la estructura. No pagó prima alguna para las otras cubiertas, en especial la Cubierta C, la que hubiera provisto cubierta para la propiedad personal. De hecho no fue su intención, conforme surge de la Sentencia apelada adquirir la Cubierta C.

Por otro lado, concurrimos con la Cooperativa que los peligros asegurados, las exclusiones y las condiciones contenidas en el Formulario Básico se refieren a todas las cubiertas para la cual se paga prima. Como bien señala la Cooperativa, concluir lo contrario significaría preparar un Formulario Básico para cada cubierta.

**V**

Por las razones arriba esbozadas, se revoca la Sentencia Parcial apelada. Se declara No Ha Lugar la demanda incoada en el caso de autos.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 113**

**1.** Como bien explica el perito: *"Toda póliza de residencia se inicia con que el asegurado desea asegurar su propiedad e indica qué específicamente desea asegurar. Esto tiene que ser así, ya que la póliza posee 4 cubiertas, y con el pago de la correspondiente prima se asegura un límite en cada cubierta...*

*Las pólizas se han hecho para facilitar el entendimiento de las mismas y agrupar varias cubiertas bajo un mismo contrato. De esa forma, los peligros asegurados, las exclusiones y las condiciones se refieren a todas las cubiertas donde se pagó una prima de seguros. Esto es así, ya que de lo contrario, habría que hacer una lista de peligros distintos para cada cubierta; entonces, la simplificación del contrato no tendría la efectividad que se requiere.*

*Para saber lo que está cubierto, el contrato se inicia con la hoja de declaraciones. En la misma se establece la efectividad, la dirección postal, la dirección de la propiedad asegurada y los límites escogidos. La hoja de declaraciones establece el acuerdo de seguro. El mismo dice: "Este seguro aplica a la localización descrita, a las cubiertas para las cuales se indica un límite de responsabilidad y a los peligros asegurados para los cuales se estipula una prima".*

*...".*

Véase págs. 66 y 67 del Apéndice.